OPINION OF THE COURT
 

 ClPARICK, J.
 

 On November 17, 1993, a team of three officers from the New York City Department of Probation Warrant Squad set out to execute two felony arrest warrants for grand larceny and a drug-related offense against a probation violator. Pursuant to the warrants, the officers went to an apartment in Brooklyn where the probationer was thought to be staying. Officer Groves knocked on the door and announced his purpose. An unidentified woman responded, and the officer informed her about the warrants, showing her a picture of the probationer. She allowed the officers into the apartment, and pointed toward the living
 
 *372
 
 room occupied by three men. Two of the men were sleeping on the living room floor and the third, the defendant, was asleep on the couch.
 

 Identifying the probationer as one of the men on the floor, Officer Groves nudged him awake. Both the second man on the floor and defendant also awakened. They began questioning the officers as to their purpose in the apartment. Officer Groves cautioned them not to interfere with the arrest. He asked the probationer to “lean up” so that the officers could see his hands. When the probationer complied, the officer observed a loaded .380 caliber automatic handgun at his side. He also saw a knife. Officer Groves secured both weapons and, fearing for their safety, all three officers drew their guns.
 

 Officer Groves then approached the second man lying on the floor. This man was completely covered with a blanket and, while peeking from under it, persisted in questioning the officers. Officer Groves instructed him to show his hands and face. As the man removed his blanket in compliance with the order, the officer observed near the man’s head a second loaded .380 caliber automatic handgun and a large quantity of cash. He too was arrested and the weapon secured.
 

 Defendant—who had been “mouthing off’ to the officers as they executed the warrants and disarmed his companions—was now sitting on his hands, fidgeting and mumbling. Officer Groves believed that defendant was hiding something, and asked defendant to “shift his position” and show his hands. Defendant was uncooperative, failing to comply until after further requests. When defendant eventually adjusted his position and placed his hands in plain view, the officer saw the butt of a 9 millimeter Luger under defendant’s thigh. Defendant denied owning the handgun, which was loaded with 14 rounds of ammunition. He was arrested, and charged with criminal possession of a weapon in the second degree (former Penal Law § 265.03) and criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]).
 

 Claiming a Fourth Amendment violation, defendant moved to suppress both the handgun and his statement denying ownership of it as the fruit of an unconstitutional seizure of his person. Following a suppression hearing, Supreme Court denied the motion in its entirety. The court stated that “the actions taken here were reasonable and related to the scope of danger imposed to the officers ...” and that the facts presented were “like” or “similar” to those presented in protective sweep cases.
 
 *373
 
 Thereafter, defendant was convicted, upon a jury verdict, of criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]), and sentence was imposed.
 

 The Appellate Division affirmed defendant’s conviction and upheld the denial of his motion to suppress, holding that the “limited security sweep conducted by the police” was reasonable and lawful. (302 AD2d 411, 411 [2003].) A Judge of this Court granted defendant leave to appeal.
 
 *
 
 We now affirm the order of the Appellate Division under a different rationale.
 

 Since defendant’s challenge to the hearing court’s determination involves a mixed question of law and fact, our review is limited to whether there is record support for the determinations of the courts below. The Appellate Division affirmed the denial of the motion to suppress without disturbing the court’s finding of reasonableness, and unless there is no view of the evidence that would support that determination, we are bound by the suppression court’s finding
 
 (People v Damiano,
 
 87 NY2d 477, 486 [1996]).
 

 Supreme Court denied defendant’s motion to suppress the handgun in a broad holding encompassing two legal standards: the protective sweep doctrine
 
 (see Maryland v Buie,
 
 494 US 325 [1990]) and the reasonableness analysis under the Fourth Amendment
 
 (see People v William II,
 
 98 NY2d 93, 98 [2002]). Neither of the parties relied on the protective sweep doctrine to support their arguments at the suppression hearing. Instead, the People argued that the officer’s conduct—asking defendant to adjust his position and show his hands—was reasonable given the totality of the circumstances. Relying on
 
 People v James
 
 (81 AD2d 795 [1st Dept 1981]) and
 
 People v Auletta
 
 (88 AD2d 867 [1st Dept 1982])—two cases employing a reasonableness analysis—defense counsel essentially argued that the officers were not justified in suspecting that defendant was armed and dangerous.
 

 We have previously noted that the facts in suppression cases are not always neatly categorized and therefore have favored general guidelines for the resolution of individual cases
 
 (see People v Prochilo,
 
 41 NY2d 759 [1977]). As the circumstances presented here did not arise during the course of a protective sweep for persons who, in hiding, posed a danger to the officers at the scene of the arrest,
 
 Buie
 
 and its progeny do not apply
 
 (see Buie,
 
 494 US at 334;
 
 see also United States v Hernandez,
 
 941
 
 *374
 
 F2d 133, 135 [1991]). The proper test to be employed is the reasonableness of the governmental invasion of defendant’s privacy under the Fourth Amendment. Moreover, “the determination of the suppression court with its peculiar advantages of having seen and heard” the testimony is entitled to great deference (Prochilo, 41 NY2d at 761).
 

 In other contexts, we have held that whether police interference is reasonable requires a weighing of the government’s interest against an individual’s right to privacy and personal security (see
 
 generally People v De Bour,
 
 40 NY2d 210, 215 [1976], citing
 
 People v Cantor,
 
 36 NY2d 106, 111 [1975]). The court “must undertake a dual inquiry: ‘whether the officer’s action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place’ ”
 
 (William II,
 
 98 NY2d at 98 [citations omitted]). The propriety of an officer’s interference with the privacy and security of an individual must be balanced against the relevant circumstances.
 

 Applying these principles to the instant case, we conclude that the officers legitimately focused their attention on defendant during the execution of the arrest warrants in the apartment. Certainly, Officer Groves’ request that defendant shift his position and show his hands was justified at its inception. The officers had discovered two loaded .380 caliber automatic handguns near defendant’s companions before turning their full attention to defendant who, by that time, was sitting on his hands, fidgeting and mumbling. Under the circumstances the officers had reason to believe that defendant could also be armed and dangerous.
 

 In light of the attendant circumstances, the intrusion here was minimal. Officer Groves merely requested that defendant shift his position and show his hands. Despite defendant’s initial failure to comply, the officer never touched defendant until he observed the 9 millimeter handgun under defendant’s thigh. On this record, the evidence supports the undisturbed finding that the limited police action was reasonable. Thus, defendant’s motion to suppress was properly denied.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges G.B. Smith, Rosenblatt, Graffeo, Read and R.S. Smith concur.
 

 Order affirmed.
 

 *
 

 Defendant does not challenge the trial court’s denial of his motion to suppress his statement disclaiming ownership of the gun.