Matter of Tyheem S. (2005 NY Slip Op 25375)

Matter of Tyheem S.

2005 NY Slip Op 25375 [10 Misc 3d 177]

August 24, 2005

Hunt, J.

Family Court, Queens County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, December 21, 2005

[*1]
In the Matter of Tyheem S., a Person Alleged to be a Juvenile Delinquent, Respondent.
Family Court, Queens County, August 24, 2005

APPEARANCES OF COUNSEL

Ronald S. Nir, Kew Gardens, Law Guardian. Michael A. Cardozo, Corporation Counsel, New York City (Stephanie A. Schwartz of counsel), for presentment agency.

OPINION OF THE COURT

John M. Hunt, J.
By petition filed on June 22, 2005, respondent is alleged to have committed acts which, were he an adult, would constitute the crimes of criminal possession of a weapon in the third degree, criminal possession of a weapon in the fourth degree, and possession of pistol or revolver ammunition in violation of Administrative Code of the City of New York § 10-131 (i) (3). In addition, petitioner also seeks an adjudication of juvenile delinquency based upon respondent's alleged violation of Penal Law § 265.05 which prohibits the possession of specific weapons by a person less than 16 years of age.
Claiming to be aggrieved by an unlawful search and seizure, respondent has moved for an order suppressing the introduction of tangible property recovered from his person by police officers on the date of his arrest.
With respect to tangible property, the presentment agency has the initial burden of going forward to show the legality of the police conduct, while respondent has the ultimate burden of proving that the evidence should be suppressed (People v Di Stefano, 38 NY2d 640, 652 [1976]; People v Pettinato, 69 NY2d 653, 654 [1986]).
[*2]
In order to determine whether evidence should be suppressed, a hearing was conducted before this court on August 17, 2005. New York City Police Officer Richard Zacarese was the sole witness to testify.
Based upon the highly credible testimony of Police Officer Richard Zacarese, the court makes the following findings of fact and conclusions of law.
Richard Zacarese has been a member of the New York City Police Department for the past six years. For the past two years he has been assigned to the "Queens Gang Squad" which is a specialized unit primarily involved in surveillance of gang activity and the investigation of crimes involving gangs. On June 15, 2005, Officer Zacarese was on routine patrol in an unmarked police vehicle along with his partners, Detective Ramos and Sergeant Figliese, who are also assigned to the Queens Gang Squad. The three officers were all wearing plain clothes. At approximately 11:40 p.m., the officers were driving in the vicinity of 155-41 116th Road in Jamaica, Queens County, a part of a several block residential area which, according to Officer Zacarese, is well known for the presence of several gang "crews" and unlawful activity by gang members including several shootings since the winter of 2004-2005. According to Zacarese, the weather on this evening was "warm and clear." At approximately 11:40 p.m., Officer Zacarese observed four young males standing stationary on the sidewalk in front of 155-41 116th Road where private vehicles were parked on both sides of this residential street. Officer Zacarese testified that one of the three individuals was wearing a "red baseball hat," another was wearing black and red trimmed sneakers and a red tee shirt and bandana, and the other was wearing a "red skull cap" and "white sneakers." The fourth individual, subsequently identified as the respondent, [*3]Tyheem S., was observed to be wearing a hooded New York Mets long sleeve sweatshirt made of a "heavy material."[FN1]

One of the other individuals was wearing a "light jacket" and the other two were wearing "tee shirts."[FN2]

According to Officer Zacarese, the area in which he observed the four individuals was "well lit" by street lights, house lights, and the headlights of passing cars, including the officers' vehicle, and he had an unobstructed view from the police vehicle.
Officer Zacarese, who was driving the police vehicle, stopped the car and as soon as he did so all four individuals "started to move" about and they moved forward and away from a fence against which they had been leaning. Zacarese and his two partners exited their vehicle and as they did so, "respondent moved behind the other three individuals and came to a stop." As he approached the four individuals, Zacarese observed an undefined "bulge" in respondent's waistband area. Zacarese stated that the item or object in respondent's waistband was pushing the sweatshirt he was wearing out and given the location of this bulge, Zacarese believed that respondent was carrying a weapon in his waistband. As Zacarese approached the group, he saw respondent walk away from behind the other three individuals where he had first moved when the officers arrived on the scene and Zacarese observed respondent move his right hand toward the bulge in his waistband and turn around to face toward the fence, causing the officer to fear for his safety. While respondent was moving, the other three individuals continued to stand on the sidewalk and Zacarese heard one of the group stating, " '[G]o inside, go inside'." Officer Zacarese reached the place where respondent was standing and as respondent moved his right [*4]hand toward the bulge in his waistband, Zacarese placed his hand over respondent's hand in a blocking action which prevented respondent from removing the item from his waistband. As Zacarese put his hand over respondent's hand he felt the butt or handle of a firearm protruding from the front of respondent's waistband. Zacarese recovered the firearm from respondent's waistband which the officer stated was a black .22 caliber Smith & Wesson semiautomatic pistol with brown grips that were partially covered in black tape and having a total length of nine inches. The pistol fires long rifle ammunition and the gun had a loaded magazine inserted so that the gun could fire rounds.[FN3]

Respondent was then arrested for the crimes charged in this petition and his three companions were arrested for the offense of disorderly conduct by one of the other officers.
"[A]ny inquiry into the propriety of police conduct must weigh the interference it entails against the precipitating and attending conditions" (People v De Bour, 40 NY2d 210, 223 [1976]; see, People v Salaman, 71 NY2d 869, 870 [1988]; People v Hensen, 21 AD3d 172, 175 [2005]). "The touchstone of any analysis of a governmental invasion of a citizen's person under the Fourth Amendment and the constitutional analogue of New York State is reasonableness" (People v Batista, 88 NY2d 650, 653 [1996] [internal quotation marks omitted]; see, People v Wheeler, 2 NY3d 370, 374 [2004]; People v Alvarez, 308 AD2d 184, 187 [2003]; People v Hensen at 175, *3, supra), and "whether police interference is reasonable requires a weighing of the government's interest against an individual's right to privacy and personal security" (People v Wheeler at 374).
The decision in People v De Bour (40 NY2d 210 [1976]), in which the Court of Appeals set out [*5]a four-tiered method representing the gradiation of permissible police encounters with citizens in a public place and which correlates the degree of the officer's objectively credible belief with the permissible scope of his or her intervention, is applicable to this case (People v Hollman, 79 NY2d 181, 195 [1992]; People v Leung, 68 NY2d 734, 736 [1986]; People v McIntosh, 96 NY2d 521, 526 [2001]).
Under the first tier of the De Bour framework, police may approach an individual for the purpose of requesting information, the least intrusive level of police inquiry, in the absence of any indication of criminality, provided that there is an objective and credible reason for doing so (People v De Bour at 213; People v Hollman at 189-190; People v Reyes, 83 NY2d 945, 946 [1994], cert denied 513 US 991 [1994]; People v Powell, 89 NY2d 1063, 1064 [1997]; People v Thomas, 19 AD3d 32, 33 [2005]). Such a request for information 
"is a general, nonthreatening encounter in which an individual is approached for an articulable reason and asked briefly about his or her identity, destination, or reason for being in the area. If the individual is carrying something that would appear to a trained police officer to be unusual, the police officer can ask about that object" (People v Hollman at 191; see, People v Ocasio, 85 NY2d 982, 985 [1995]). 
While an officer may not forcibly detain an individual as part of a request for information (People v Howard, 50 NY2d 583, 590 [1980]; People v Martinez, 80 NY2d 444, 447 [1992]; People v May, 81 NY2d 725, 728 [1992]), the officer may request that a person stop so that information can be requested (People v Reyes, 83 NY2d at 946; People v Williams, 226 AD2d 750, 751 [1996]; People v Jones, 221 AD2d 998 [1995]).
Under the second tier of De Bour, the common-law right of inquiry, the police may stop an individual without the use of force for the purpose of questioning that person where there is a founded suspicion of criminal activity (People v De Bour at 215; People v Hollman at 191; People v Spencer, 84 NY2d 749, 753 [1995], cert denied 516 US 905 [1995]; People v Battaglia, 86 NY2d [*6]755, 758 [1995]; People v Giles, 223 AD2d 39, 40-41 [1996]; People v Sanchez, 8 AD3d 504, 505 [2004], lv denied 3 NY3d 711 [2004]). The right of an officer to stop an individual for questioning necessarily includes directing that a person stop moving, which has been found not to constitute a seizure under the Fourth Amendment (People v Bora, 83 NY2d 531, 534 [1994]; California v Hodari D., 499 US 621, 626 [1991]).
Under the third tier of De Bour, the police may forcibly stop, detain or pursue an individual if an officer has reasonable suspicion that a crime has been, is being, or is about to be committed (People v De Bour at 223; People v Leung at 736; People v Martinez at 447; People v May at 728; People v Sierra, 83 NY2d 928, 929-930 [1994]). The term reasonable suspicion is defined as that quantum of knowledge sufficient to induce an ordinarily prudent and cautious person under the circumstances to believe that criminal activity is afoot (People v Martinez at 448; People v William II, 98 NY2d 93, 98 [2002]; People v Woods, 98 NY2d 627, 628 [2002]).
Finally, under the fourth tier of De Bour, the police may forcibly stop and arrest an individual where there is probable cause to believe that an offense has been or is being committed (People v De Bour at 223; People v Bigelow, 66 NY2d 417, 423 [1985]; People v Hicks, 68 NY2d 234, 238 [1986]; People v Yancy, 86 NY2d 239, 245 [1995]; People v Maldonado, 86 NY2d 631, 635 [1995]).
While "the facts in suppression cases are not always neatly categorized" (People v Wheeler at 373), the court finds that the conduct of the police officers in this case was entirely lawful. Police Officer Zacarese and his two partners from the Police Department's Gang Squad were on patrol on the night of June 15, 2005. As members of the Gang Squad, they have particular responsibilities for detecting and investigating gang activity. As the officers drove onto 116th Road in Jamaica, a residential street which is part of a several block area known for [*7]the presence of gangs and for illegal gang activity, he observed four young males standing together near a fence. Three of these individuals were wearing red clothing, a color particularly associated with the "Bloods" street gang (e.g., Matter of Donovan B., 278 AD2d 95, 95-96 [2000], lv denied 96 NY2d 709 [2001]). When the four individuals observed the officers, they moved away from a fence against which they had been leaning and toward the sidewalk as a group. Although there was no indication that the four individuals were then engaged in criminal activity, given the time of night, the fact that three of the four people were wearing clothing of a color associated with membership in a notorious street gang, and the fact that they were in an area known to the officers to be frequented by gang members, there was an objective and credible reason for the officers to approach these four individuals to request information. The furtive and apparently choreographed movements of the four individuals away from the fence after they apparently saw the three officers in their vehicle added to the suspicious circumstances.
After the officers exited their vehicle, respondent then began to move behind the other three individuals and, from a short distance away, Officer Zacarese, who had an unobstructed view of all four people, noticed a "bulge" under respondent's sweatshirt in his waistband area. Because a waistband bulge is considered to be "telltale of a weapon" (People v De Bour at 221; see, People v Howard, 147 AD2d 177, 181 [1989], appeal dismissed 74 NY2d 943 [1989]; People v Thomas, 258 AD2d 413, 414 [1999], lv denied 93 NY2d 980 [1999]; People v Chang, 275 AD2d 423 [2000], lv denied 95 NY2d 909 [2000]), Officer Zacarese clearly had at that point a common-law right to stop respondent and question him about the waistband bulge (People v Thomas at 414; People v Smith, 267 AD2d 98 [1999], lv denied 95 NY2d 804 [2000]; Matter of Jamaal C., 19 AD3d 144 [2005]), including the right to touch respondent's waistband area in order to determine whether there was a weapon[*8] (see, People v Prochilo, 41 NY2d 759 [1977]; People v Chestnut, 51 NY2d 14, 21 [1980], cert denied 449 US 1018 [1980]; People v Russ, 61 NY2d 693, 695 [1984]). Once Zacarese put his hand over respondent's hand and felt the butt or handle of a pistol, there was probable cause to arrest him for possession of the firearm (People v Bigelow at 423; People v Hicks at 238; People v Yancy at 245; People v Maldonado at 635).
Accordingly, it is hereby ordered that respondent's motion to suppress the introduction of the pistol at trial is denied.
<
>[Portions of opinion omitted for purposes of publication.]
>

Footnotes

Footnote 1: A photograph of respondent wearing the clothes worn when he was observed on the street by Officer Zacarese was introduced in evidence at the hearing.

Footnote 2: The three individuals seen standing with the respondent were subsequently identified as Gary B., Brandon H. and Tyrell J.

Footnote 3: A photograph of the pistol was introduced into evidence at the hearing by the presentment agency.