Matter of Ernest H. (2006 NY Slip Op 50159(U))

[*1]

Matter of Ernest H.

2006 NY Slip Op 50159(U) [10 Misc 3d 1079(A)]

Decided on February 7, 2006

Family Court, Queens County

Hunt, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 7, 2006

Family Court, Queens County
In the Matter of Ernest H., a Person Alleged to be a Juvenile Delinquent, Respondent.
D-5XX/06

John M. Hunt, J.
I

By petition filed on January 26, 2006 respondent is alleged to have committed acts which,
were he an adult, would constitute the crimes on Criminal Possession of a Weapon in the Third
and Fourth Degrees and Possession of Pistol or Revolver Ammunition. The Presentment Agency
also seeks an adjudication of juvenile delinquency based upon respondent's alleged violation of
Penal Law §265.05 which prohibits the possession of specific weapons by persons less than16
years of age.[FN1]
Claiming to be aggrieved by an unlawful search and seizure, respondent has moved for
an order suppressing the introduction of tangible property seized by police officers on the date
of his arrest.
With respect to tangible property, the Presentment Agency has the initial burden of
going forward to show the legality of the police conduct, while respondent bears the ultimate
burden of proving that the evidence should be suppressed (People v. DeStefano, 38 NY2d 640,
[*2]
652; People v. Pettinato, 69 NY2d 653, 654).
In order to determine whether evidence should be suppressed, a hearing was conducted
before the Court on January 26, 2006. New York City Police Detective Frank Gramarossa was
called by the Presentment Agency and was the sole witness to testify.
Based upon the highly credible testimony of Detective Gramarossa, the Court makes the
following findings of fact and conclusions of law.
Frank Gramarossa, who has been a New York City Police Detective for six years, and
assigned to the Queens Gang Squad for the past five years, was on patrol in street clothes with
his partner, a Police Department Sergeant, in an unmarked police vehicle on January 18, 2006.
At approximately 8:30 P.M. that day, the police vehicle was situated at the corner of 31st Avenue
and 91st Street, an area of mixed residential and commercial structures near Astoria Boulevard in
Queens County, which was well-lit by street lights and the light coming from homes. From his
seat on the front passenger side of the car, Detective Gramarossa observed an individual who was
subsequently identified as the respondent, Ernest H., walking alone on 91st Street "in front of
[the] car on the driver's side. According to the Detective, this individual, who apparently had
not noticed the vehicle because there had been "no eye contact" with the officers, "looked like he
was going to cross the street" from 91st Street to 31st Avenue and when he got a quarter of the
way across the street he "stopped and looked down, reached for his waist to adjust something."
Respondent then turned and returned to the corner of "91st Street".
Based upon his training and experience, when Detective Gramarossa saw respondent
reach for his waist area and adjust something, he believed "that he was adjusting something
that was possibly a weapon." Gramarossa believed that respondent may have been adjusting a
[*3]
weapon because of "the way he originally came in the street, looked down, adjusted the weight
in his waist, where [I] recovered many guns before." According to the Detective, the respondent
was wearing a waist-length jacket, a white tee-shirt and a hooded sweatshirt, "like . . . lifted his
tee-shirt and he reached at his waistband to the right side of the midline of his waist . . . .
approximately two inches from the middle of his body" and he adjusted something for
approximately "[t]wo seconds". Respondent then turned and walked back to where he had come
from. The officers then proceeded to drive past respondent who continued walking towards
Astoria Boulevard on 91st Street. The officers made a u-turn in their vehicle and headed back
towards 91st Street and they tried to approach respondent before he turned on to Astoria
Boulevard. As they approached respondent in their vehicle, Gramarossa recalled that respondent
was again situated on the driver's side of the vehicle on the sidewalk and "he stopped again [and]
he went to his waist again." Gramarossa explained that he observed respondent walking and then
he "looked down" and moved his right hand towards his waist area where he "adjusted
something in his waist."
Because Gramarossa had observed respondent stop twice "like something was falling
down or falling off him" and saw him adjust something in his waist area, the officers decided
to investigate further. They pulled their vehicle up alongside respondent and Gramarossa "rolled
my window down" took out his shield and from "like a car length away" from respondent, said
"police" and asked respondent "dude, what's up?". At that point, respondent "lifted his hand[s]
up immediately [and] said I just found it on the corner." At that point, believing it likely that
respondent possessed a weapon, Gramarossa and the Sergeant immediately exited the vehicle and
Gramarossa went over to where respondent was standing. According to him, when he was about
[*4]
a foot away from the respondent "I saw where the gun was, where his tee-shirt was over it. I
could see an outline and a bulge on his right waist" which he described as the handle of a gun
and a little part of the body of the gun and "I just yelled just relax, just relax' and he lowered his
hands." Gramarossa then put his hand in the right side of respondent's waistband where he had
seen respondent adjusting something and the Detective felt the handgun which he grabbed from
respondent's waistband. Upon inspection, Gramarossa learned that the gun he recovered was a
loaded 9 millimeter Smith & Wesson semi-automatic pistol which is made of metal and
somewhat less than10 inches in length.[FN2] The Sergeant, who was standing behind the respondent,
patted him down after Gramarossa recovered the pistol. Respondent was then placed under arrest
and a further search of his person led to the discovery of a portable CD player in his left coat
pocket.
 II
"[A]ny inquiry into the propriety of police conduct must weigh the interference it entails
against the precipitating and attending conditions" (People v. DeBour, 40 NY2d 210, 223; see,
People v. Salaman, 71 NY2d 869, 870; People v. Hensen, 21 AD3d 172, 175, lv. denied 5 NY3d
828). Thus, "the touchstone of any analysis of a governmental invasion of a citizen's person
under the Fourth Amendment and the constitutional analogue of New York is reasonableness"
(People v. Batista, 88 NY2d 650, 653 [internal quotation marks omitted]; see, People v. Wheeler,
2 NY3d 370, 374; People v. Alvarez, 308 AD2d 184, 187, lv. denied 3 NY2d 657; People v.
Hensen, at 175), and "whether police interference is reasonable requires a weighing of the
[*5]
government's interest against an individual's right to privacy and personal security" (People v.
Wheeler, at 374).
The decision in People v. DeBour (40 NY2d 210), in which the Court of Appeals set out
a four-tiered framework representing the gradation of permissible warrantless police encounters
with citizens in a public place and which correlates the degree of the officer's objectively
credible belief with the permissible scope of the officer's intervention, is applicable to this case
(People v. Hollman, 79 NY2d 181, 195; People v. Leung, 68 NY2d 734, 736; People v.
McIntosh, 96 NY2d 521, 526).
Under the first tier of DeBour, the police may approach an individual for the purpose of
requesting information, the least intrusive level of police inquiry, in the absence of any indication
of criminality, provided that there is an objective and credible reason for doing so (People v.
DeBour, at 213; People v. Hollman, at 189-190; People v. Reyes, 83 NY2d 945, 946, cert. denied
513 US 991; People v. Powell, 89 NY2d 1063, 1064; People v. Thomas, 19 NY3d 32, 33, lv.
denied 5 NY3d 795). A request for information under the first tier of DeBour "is a general,
nonthreatening encounter in which an individual is approached for an articulable reason and
asked briefly about his or her identity, destination, or reason for being in the area. If the
individual is carrying something that would appear to a trained officer to be unusual, the police
officer can ask about that object" (People v. Hollman, at 191; see, People v. Ocasio, 85 NY2d
982, 985). While an officer may not forcibly detain a person as part of a request for information
(People v. Howard, 50 NY2d 583, 590; People v. Martinez, 80 NY2d 444, 447; People v. May,
81 NY2d 725, 728), an officer may request that a person stop so that information can be
[*6]
requested (People v. Reyes, at 946; People v. Williams, 226 AD2d 750, 751; People v. Jones,
221 AD2d 998).
Under the second tier of DeBour, the common-law right of inquiry, police officers may
stop an individual without the use of force, for the purpose of questioning that person where
there is a founded suspicion of criminal activity (People v. DeBour, at 215; People v. Hollman,
at 191; People v. Spencer, 84 NY2d 749, 753, cert. denied 516 US 905; People v. Battaglia,
86 NY2d 755, 758; People v. Giles, 223 AD2d 39, 40-41, lv. denied 89 NY2d 864; People v.
Sanchez, 8 AD3d 504, 505, lv. denied 3 NY3d 711). The right of the officer to stop a person for
questioning under the common-law right of inquiry necessarily entails an interruption with the
individual's movement. However, a brief stop for the purpose of questioning has been found not
to constitute a seizure under the Fourth Amendment or New York Constitution (People v. Bora,
83 NY2d 531, 534; Matter of Jamaal C., 19 AD3d 144, 145; California v. Hodari D., 499 US
621, 626).
Under the third tier of DeBour , the police may forcibly stop, detain or pursue an
individual if an officer has reasonable suspicion to believe that a crime has been, is being, or
is about to be committed (People v. DeBour, at 223; People v. Leung, at 736; People v. Martinez,
at 447; People v. May, at 728; People v. Sierra, 83 NY2d 928, 929-930). The term "reasonable
suspicion" is defined as that quantum of knowledge sufficient to induce an ordinarily prudent and
cautious person under the circumstances to believe that criminal activity is afoot (People v.
Martinez, at 448; People v. William II., 98 NY2d 93, 98; People v. Woods, 98 NY2d 627, 628).
Finally, under the fourth tier of DeBour, the police may forcibly stop and arrest an
individual where there is probable cause to believe that an offense has been or os being
[*7]
committed (People v. DeBour, at 223; People v. Bigelow, 66 NY2d 417, 423; People v. Hicks,
68 NY2d 234, 238; People v. Yancy, 86 NY2d 239, 245; People v. Maldonado, 86 NY2d 631,
635).
While "the facts in suppression cases are not always neatly categorized" (People v.
Wheeler, at 373), in this case, viewing the facts in their totality (People v. Shulman, __ NY3d
___, 2005 NY Slip Op 07827; People v. Bigelow, at 423), this Court finds that the conduct of
Detective Gramarossa and his partner was entirely reasonable and lawful. Detective Gramarossa,
an experienced officer who has been a Detective with the Gang Squad for the past five years,
testified that while he and his partner were on patrol in an unmarked police vehicle in Queens
County at 8:30 P.M. on January 23, 2006. When the officers were driving in the vicinity of 31st
Avenue and 91st Street, Gramarossa observed the respondent walking alone on the sidewalk on
91st Street. From his vantage point in the front passenger seat, Gramarossa saw that respondent
was about to cross the street. Respondent began to cross the street and, as he got a quarter of the
way across the street, Gramarossa observed that respondent "stopped and looked down [and]
reached for his waist to adjust something." Respondent then walked back onto the sidewalk on
91st Street and proceeded in the direction of Astoria Boulevard. Although the Detective had not
then observed a weapon secreted on respondent, because he thought that he might have a
weapon, the officers decided to keep him under observation. The Sergeant drove the unmarked
car past where respondent was walking and then proceeded to make a u-turn and drove back
towards respondent. At this point, Gramarossa again observed respondent come to a stop and
proceed to adjust something at his waist. At this point in time, having observed respondent twice
stop walking and twice adjust something at his waist, the officers decided to investigate. They
[*8]
pulled their vehicle next to respondent. Gramarossa rolled down the passenger side window,
displayed his shield, and said "dude, what's up?" to respondent. Respondent then raised his
arms and stated " I just found it on the corner'". At this point, believing that respondent was
armed with a weapon, the officers exited the vehicle. When Gramarossa approached respondent,
who had been standing only a few feet away from the police vehicle, he observed the outline of
the handle of a pistol under respondent's white tee-shirt. Gramarossa recovered a 9 millimeter
semi-automatic pistol from respondent's waistband and placed him under arrest.
In this case, the actions of Gramarossa and his partner in pulling their unmarked vehicle
next to respondent who was walking along 91st Avenue were based upon Gramarossa's
observation of the respondent having twice stopped walking and his adjustment of "something"
in his right waistband area. While the Detective did not testify that he initially observed a bulge
in respondent's waistband area, which would have been considered a "telltale of a weapon"
(People v. DeBour, at 221; People v. Howard, 147 AD2d 177, 181, app. dismissed 74 NY2d 943; 
People v. Thomas, 258 AD2d 413, 414, lv. denied 93 NY2d 980), it is generally "recognized
that an object stored in the waistband is most likely to be a weapon" (People v. Jenkins, 209
AD2d 164, 165; see, People v. DeBour, at 221; People v. Benjamin, at 271; People v. Giles, at
42; People v. Corbett, 258 AD2d 254, 255, lv. denied 93 NY2d 898), and the fact that Detective
Gramarossa twice observed respondent stop walking and look down as he adjusted something in
his waistband in an attempt to secure or secrete an object strongly suggested the presence of
a weapon (see, People v. Giles, at 42; Matter of Antonio A., 249 AD2d 202, 203, lv. denied 92
NY2d 806; Matter of Michael J., 270 AD2d 181, lv. denied 94 NY2d 762; Matter of Jamaal C.,
at 145), justifying more intrusive action by the officers.
The observations of Detective Gramarossa justified at the very least a common-law right
of inquiry based upon a founded suspicion of criminal activity (People v. DeBour, at 221-223; 
People v. Jenkins, 209 AD2d 164, 165; People v. Smith, 267 AD2d 98, lv. denied 95 NY2d 804; 
People v. Pines, 281 AD2d 311, aff'd 99 NY2d 525; People v. Hernandez, 3 AD3d 325, lv. 
denied 2 NY3d 741; Matter of Jamaal C., at 145), and justified the officers' pulling their vehicle
alongside respondent for the purpose of making inquiry. While the testimony establishes that a
portable CD player was recovered from the left pocket of respondent's jacket, the Detective's
testimony establishes that he was focused on respondent's adjustment of an item on the right side
of his waistband. After Detective Gramarossa asked respondent "dude, what's up?", the
respondent reflexively lifted his arms and stated that he was in possession of something he
"found on the corner" which revealed the outline of a pistol on the right side of respondent's
waistband under his white tee-shirt, the officers lawfully recovered the gun from his person
which provided probable cause to arrest him for possession of the firearm (People v. Bigelow, at
423; People v. Hicks, at 238; People v. Yancy, at 245; People v. Maldonado, at 635).
Accordingly, because the actions of the officers was lawful and the pistol was properly
recovered from respondent's person, respondent's motion to suppress the pistol is denied.
This constitutes the opinion, decision and order of the Court.
E N T E R:
_______________________
JOHN M. HUNT
Judge of the Family Court
Dated: Jamaica, New York
 February 7, 2006

Footnotes

Footnote 1:Penal Law §265.05 provides, inter alia, that "[a] person who violates this section shall
be adjudged a juvenile delinquent."

Footnote 2:A photograph of the handgun, magazine and ammunition which Detective Gramarossa recovered from respondent's waistband was introduced into evidence.