(January 29, 2008)

In the Matter of ELVIN G., a Person Alleged to be a Juvenile Delinquent, Appellant. [851 NYS2d 129]—

Order of disposition, Family Court, Bronx County (Monica Drinane, J.), entered on or about August 3, 2006, which adjudicated appellant a juvenile delinquent, upon a fact-finding determination that he committed the act of unlawful possession of a weapon by a person under 16, and placed him with the Office of Children and Family Services for a period of 12 months, affirmed, without costs.

The court properly denied appellant's suppression motion without granting a hearing since his allegations on their face "did not lay out a factual scenario which, if credited, would have warranted suppression" (*People v Mendoza*, 82 NY2d 415, 432 [1993]). Even under appellant's version of the facts, in which he asserted that a dean at his school, who was responding to a call from his teacher that an apparently unknown student was using a device, possibly a cellular phone, to make disruptive sounds, "had the students stand up, and started checking their pockets for something that was making musical sounds [and that] . . . once it became clear that students in the classroom were subject to this search, [appellant] took the [hunting] knife out of his pocket," he did not present a legal

basis upon which to challenge the school official's conduct (*see New Jersey v T. L. O.*, 469 US 325, 341-342 [1985] ["Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and are not excessively intrusive in light of the age and sex of the student and the nature of the infraction"]; *cf. Matter of Haseen N.*, 251 AD2d 505, 505-506 [1998] [the Halloween morning administrative "search" of students as they arrived at school, designed to prevent a recurrence of the egg-throwing melees that had occurred on the three previous Halloweens, which entailed a quick pat down of the students' outer clothing by nonpolice school personnel, "was the least intrusive, most practical means of locating concealed eggs, and represented a reasonable balance between the competing interests of the students in privacy and the school administrators in maintaining order"]).

With regard to the dissent's criticism of the Family Court's initial determination that there was no search because both appellant and the presentment agency agreed that appellant had the knife in his hand in open view of the dean, the court did not stop there, but went on to hold that "[e]ven if it could be argued that the dean conducted a 'search' of [appellant's] person, the dean's actions were reasonably related to restore [*sic*] order to the classroom and the 'search' was not excessively intrusive in light of [appellant's] age and sex and the nature of the infraction. The dean's actions were justified in their inception because the teacher and the dean were restoring order to the classroom."

As to the Family Court's further determination that the dean's request that the students empty their pockets was the least intrusive, most practical means of finding the offending cellular phone, the dissent states that it is mystified as to the basis for such conclusion and would remand for a hearing so as to require "testimonial proof from the school as to why a search of pockets was the least intrusive and most practical means of finding the ringing cell phone or how that search was a reasonable balance between the competing privacy interest of the students and the interest of school administrators in maintaining order." Again, however, we fail to see any purpose for such a remand in this case since, as the Court of Appeals has reminded us, a determination of the reasonableness and lawfulness of any search presents a mixed question of fact and law (*People v*

*Wheeler*, 2 NY3d 370, 373 [2004]). Thus, since the dissent agrees that it is undisputed that the dean entered the classroom to investigate an apparent violation of school rules, the only issue remaining to be determined is the legal question presented by appellant's motion which was premised on his assertion that the subsequent search was illegal because the dean had "no reasonable suspicion that [he] engaged in any illegal activity."

The dissent also claims that the Family Court failed to apply the correct legal standard to the facts of this case; however, contrary to appellant's assertion that the dean had no reason to believe that he personally was engaged in any illegal activity, the Court of Appeals has found it "noteworthy that the Supreme Court in *New Jersey v T. L. O. (supra)* specifically disclaimed that its decision made some quantum of individualized suspicion an essential element of every school search (*see id.* at 342, n 8)" (*Matter of Gregory M.*, 82 NY2d 588, 593 [1993]). Thus, although the dean may not have had reasonable suspicion that appellant was the offending student, such individualized suspicion in the context of an administrative search such as this was not required. The dean clearly had a reasonable basis to believe that some student in the classroom was violating school rules and there is no question that such breach was disrupting the class.

Nevertheless, the dissent finds that "appellant correctly asserts that a search involving the emptying of pockets . . . could not be considered the least intrusive means because no showing was made that the presence of a cell phone in a classroom presented any kind of threat to the safety of the students or the school personnel." That, however, is the wrong standard to be applied. "The special need for an immediate response to behavior that threatens either the safety of schoolchildren and teachers *or the educational process itself* justifies the Court in excepting school searches from the warrant and probable-cause requirement, and in applying a standard determined by balancing the relevant interests" (*New Jersey v T. L. O.*, 469 US at 353 [Blackmun, J., concurring] [emphasis added]). As the Family Court properly found, "the dean simply sought to restore order to a disrupted classroom, which is not a law enforcement interest. Therefore, the dean's subsequent actions required neither probable cause nor reasonable suspicion to justify asking students to empty their pockets."

Accordingly, given the circumstances presented and balancing the relevant interests, it cannot be said, as a matter of law, that asking students to empty their pockets in order to restore order to the classroom and enable the classroom teacher to resume

the lesson was unreasonable or overly intrusive. Concur—Andrias, Marlow and Buckley, JJ.

Lippman, P.J., and Catterson, J., dissent in a memorandum by Catterson, J., as follows: I must respectfully dissent for the following reasons:

Whatever the latitude possessed by school authorities in conducting searches for the purpose of restoring order, a minimum legal standard nevertheless exists.

That standard requires a balancing of the relevant interests; that is the interests of the students in privacy and the school authorities in maintaining order, as well as a determination that the measures adopted were reasonably related to the objective of the search.

Here, the school authorities conducted an extremely intrusive search ordering the students, as a class, to empty pockets which generally hold a person's (even a child's) most valuable, personal and intimate possessions. Their objective was to locate the source of a noise which "sounded like" the ringing of a cell phone but which had ceased ringing by the time of the search.

I therefore fail to comprehend how any court may make a determination that the measure was reasonably related to the objective without a hearing, without any testimonial proof from the school but simply as a matter of law.

The undisputed facts of the case are that, on November 30, 2005, the appellant was 15 years old and a student in middle school. The teacher of the class he was attending reported to a dean at the school that a noise, which sounded like a ringing cell phone, was disrupting her class. The dean entered the classroom to investigate and enforce the school rule that prohibited cell phone use in class. As a result, a hunting knife with a six-inch blade was discovered in the appellant's possession.

A petition was filed by the presentment agency charging that the 15 year old had committed the delinquent acts of criminal possession of a weapon in the fourth degree, and unlawful possession of a weapon by a person under 16. The appellant filed an omnibus motion seeking, inter alia, the suppression of the knife on the grounds that it was unlawfully obtained in violation of state law and the Federal and State Constitutions.

In his affirmation, the appellant's attorney stated that in the classroom search the "Dean had the students stand up, and started checking their pockets for something that was making musical sounds" and that "once it became clear that students in the classroom were subject to this search, [the appellant]

took the knife out of his pocket." The agency, on the other hand, contended that no search had taken place because the appellant was holding the knife in plain view.

The Family Court summarily denied the motion to suppress. It agreed with the agency that no search had been conducted because the knife was in open view, and so there was no basis for suppressing the knife. Further, the court found that both the appellant and the agency agreed that the knife was in the appellant's hand; thus, reasoned the court, there was no factual dispute as to whether a search of the appellant had taken place, and therefore no basis for a suppression hearing. Additionally, the court held that there was no legal basis for suppression since even if the dean had conducted a search, the dean's actions were reasonably related to the restoration of order and "[t]he dean's request that the students empty their pockets 'was the least intrusive, most practical means' of finding the cellular phone."

Subsequently, the appellant admitted that he had committed the delinquent act of unlawful possession of a weapon by a person under the age of 16. The court adjudicated the appellant a juvenile delinquent and placed him with the Office of Children and Family Services for 12 months.

The appellant now asserts that the lower court erred in denying his motion to suppress because the dean's order for the students to empty their pockets constituted a search, and the search was not reasonable or lawful. The agency continues to maintain that no search occurred but that, if it did, the "dean's request to empty their pockets" was the least intrusive, most practical means of finding the cell phone. For the reasons set forth below, I would reverse the disposition of the Family Court, vacate the finding of juvenile delinquency, and remand the matter for a suppression hearing.

In my opinion, the Family Court erred by summarily denying the appellant's motion to suppress. To make such a determination on the basis that there came a point when the knife appeared in open view begs the question of how the knife came into open view. In a sense, there comes a point in every search and seizure case where physical evidence comes into open view. It is precisely the process of how it comes into open view that lies at the crux of any determination of a motion to suppress. (*People v Spinelli*, 35 NY2d 77, 80 [1974] [in order for item to be considered in plain view, the object must have come into plain view inadvertently]; *see e.g. People v Harley*, 188 AD2d 423 [1st Dept 1992], *lv denied* 81 NY2d 886 [1993] [drugs deemed not in plain view since they came into open view only

after police officer picked up money bills covering them]; *People v Sciacca*, 78 AD2d 545 [2d Dept 1980] [boxes determined not in plain view because they came into open view only after police officer jumped up and used flashlight in a closed garage].)

In this case, there was a factual dispute between the parties concerning the events prior to the knife "suddenly" appearing in the appellant's hand. In fact, counsel for the presentment agency offered two divergent accounts. In its affirmation in opposition to the motion to suppress, counsel for the agency stated: "When [the dean] arrived at the [appellant's] classroom to investigate, [he] observed the respondent holding the knife in question." Counsel then affirmed that, "Simply stated, [the dean] asked the students to place their bookbags on their desk in order to find the source of the disturbance. The [appellant] removed the knife from a concealed place and held it in plain view for [the dean] to see."

The former conveys the distinct impression that the appellant was actually holding the knife in open view as the dean entered the classroom, a situation which certainly could have supported a ruling that no search had occurred. However, the latter, far from being a simple statement, "muddies the waters" by alleging the appellant brought the knife into open view only after the dean had ordered the students to place their bookbags on their desks.

Finally, there was a third version adduced below: the appellant alleged that he brought the knife out of his pocket only after the dean started checking students' pockets for something that was making a musical noise.

The court below acknowledged the different accounts of events preceding the appearance of the knife in the appellant's hand. Inexplicably, however, it chose to deny the appellant's motion for a suppression hearing and instead determined that the "plain view" doctrine applied "because both [parties] agree that [the appellant] had the knife in [his] hand."

This was error since the appellant's version, if true, would have necessitated the determination that a search had occurred. (*See Matter of Bernard G.*, 247 AD2d 91, 94 [1st Dept 1998] [holding that when the authorities ask a suspect to "empty his pockets," that is "the equivalent of searching his pockets themselves"]; *see People v Lipscomb*, 179 AD2d 1043, 1044 [4th Dept 1992] [police request that suspect empty his pockets constituted a search].) It would then follow that the plain view doctrine was inapplicable in this case. (*See Arizona v Hicks*, 480 US 321, 324-329 [1987] [item is not properly seized under the plain view doctrine if its existence is discovered as a result of a search].)

Moreover, the Family Court's determination that no search occurred cannot be anything but erroneous in light of its apparent acceptance, elsewhere in its decision, of the appellant's version of events. On page two of its order, the court refers to "[t]he dean's request that the students empty their pockets" as part of the search for the cell phone, and on page three the court finds that the dean did not need any level of suspicion "to justify asking students to empty their pockets."*

The court below further compounded its error by proceeding to hold, as a matter of law, that even if a search had occurred, it was lawful. The court did so by citing *New Jersey v T. L. O.* (469 US 325, 341-342 [1985] [finding, "Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school"]), and *Matter of Haseen N.* (251 AD2d 505, 506 [2d Dept 1998] [holding that an administrative search will be reasonable if the method used is the least intrusive, most practical means of addressing the problem and represents "a reasonable balance between the competing interests of the students in privacy and the school administrators in maintaining order"]). The majority likewise cited to these two cases to support its view that the appellant had no legal basis for challenging the school's conduct.

However, the fact that school authorities are given a wide latitude to conduct searches on school premises, does not mean that students forfeit all their Fourth Amendment rights when they step through the school doors. On the contrary, the two cited cases stand for the proposition that even administrative searches to enforce school safety rules must meet certain minimum standards before they can be deemed lawful. (*See Matter of Haseen N.*, 251 AD2d at 505 [1998] [pat-down search by nonpolice school personnel of outer clothing performed to prevent recurrence of Halloween egg throwing was determined to be legal because it was the least intrusive, most practical means of locating concealed eggs and was a reasonable balance between the competing interest of the school and the students].)

In my view, both the Family Court and the majority fail to ap-

---

* Significantly, the agency, even while still arguing on appeal that the court was correct in adopting the plain view doctrine, appears also to subscribe now to the appellant's version of events. On page 9 of its brief, the agency in its argument on the legality of a search states: "The dean's request to empty their pockets 'was the lease [*sic*] intrusive, most practical means' of finding the cell phone."

ply the correct legal standard to the facts of the case at bar. The court simply states that, "[t]he dean's request that the students empty their pockets 'was the least intrusive, most practical means' of finding the cellular phone, and the request 'represented a reasonable balance between the competing interests of the students in privacy and the school administrators in maintaining order.' "

It remains a mystery as to what basis the court used for this determination. Since there was no suppression hearing, there is no record, and no testimonial proof from the school as to why a search of pockets was the least intrusive and most practical means of finding the ringing cell phone or how that search was a reasonable balance between the competing privacy interest of the students and the interest of school administrators in maintaining order. Indeed, *Matter of Haseen N.*, cited by the Family Court, makes it clear that a suppression hearing is required in order for the agency to submit testimonial proof from school officials as to the legality of the search and also to afford the student an opportunity to meet his or her burden of proving by a preponderance of the evidence that the physical evidence should be suppressed. (*Id.* at 505-506.)

In this case, in my view, the appellant correctly asserts that a search involving the emptying of pockets containing possessions of a personal and private nature could not be considered the least intrusive means because no showing was made that the presence of a cell phone in a classroom presented any kind of threat to the safety of the students or the school personnel. Placing bookbags on the desk would have been a minimal and more appropriate means to identify an offending cell phone. The appellant could also argue that a search of pockets could not be considered the most practical means, since such a search would probably result in the discovery that several students had cell phones in their pockets, and such discovery would be of little practical value if the cell phone had ceased ringing. Lastly, the school can conduct a suspicionless administrative search only where the need to do so outweighs the privacy interests of the students being searched. (*See Matter of Haseen N.*, 251 AD2d at 506.) Generally, searches like this are conducted in the interest of providing a safe environment by keeping weapons or drugs out of the school. (*Id.*; *see also Matter of Richard A.*, 215 AD2d 475 [2d Dept 1995] [school properly seized drugs discovered during an administrative search "conducted for the special needs of school security"]; *see also People v Dukes*, 151 Misc 2d 295 [Crim Ct, NY County 1992] [upholding a mass scan of students for weapons by a metal detector at school entrance].)

In this case, the school would be hard-pressed to justify such a substantial invasion of students' privacy as emptying their pockets on the ground that it was outweighed by the need to quell an offensive ring tone which by all accounts, was no longer ringing at the time of the search.

Accordingly, I would hold the appeal in abeyance and remand the matter for a suppression hearing.