OPINION OF THE COURT
 

 Simons, J.
 

 The sole issue presented on this appeal is whether a direction by a uniformed police officer to "stop”, made to defendant as he began to walk away from the officer on a street corner, constituted a "seizure” as a matter of law.
 

 I.
 

 On June 1, 1989, Police Officer Stuller and his partner received a radio report that a black male, wearing red and blue clothing, was selling narcotics on the corner of 148th Street and St. Nicholas Avenue in Manhattan. The officers proceeded to the corner, arriving within one minute, where they observed approximately 10 people, including defendant, standing. Defendant, who is black, was the only person on the corner wearing red and blue clothing. When Officer Stuller got out of the patrol car, defendant was 15 to 20 feet away from the officers. He looked in their direction and, as Officer Stuller walked toward him, defendant began to move away. When Stuller directed defendant to "stop”, he ran. As he fled, he threw a brown paper bag to the ground. The officers pursued defendant and arrested him. The bag was recovered and found to contain 101 vials of crack cocaine.
 

 Before trial, defendant moved to suppress the drugs. He maintained that the command to "stop” constituted a seizure, that the officers did not possess the requisite reasonable suspicion to effect a seizure and, therefore, the bag containing the vials of cocaine was the product of the unlawful police conduct and had to be suppressed. Supreme Court denied the motion and defendant thereafter pleaded guilty to the crime of criminal possession of a controlled substance in the fifth degree. The Appellate Division affirmed, holding that the police had a sufficient basis for making a common-law inquiry of defendant and that, by attempting to flee, defendant had provided the officers with reasonable suspicion to pursue him (191 AD2d 384, 385-386).
 

 II.
 

 On this appeal defendant does not question the officers’ right to make a common-law inquiry or his subsequent pur
 
 *534
 
 suit. Rather, he contends that he was unlawfully seized by the direction to stop at a time when the officer, as the legal test requires, had no reasonable basis to suspect that a crime had been, was being, or was about to be committed
 
 (see, Terry v Ohio,
 
 392 US 1, 27;
 
 People v Martinez,
 
 80 NY2d 444, 447;
 
 People v Leung,
 
 68 NY2d 734, 736). Thus, the narrow issue presented is whether the officer’s conduct was a sufficient show of authority under the circumstances to escalate a lawful investigative inquiry into an unlawful seizure of defendant’s person.
 

 Under the Fourth Amendment of the Federal Constitution, as recently interpreted, it is clear that defendant was not seized when the officers asked him to stop. The Supreme Court held in
 
 California v Hodari D.
 
 (499 US 621, 626) that a seizure requires either physical force or, if there is no physical force, a submission to the assertion of authority. Inasmuch as defendant Hodari D. fled in that case, he was not seized, for purposes of the Federal Constitution, until he was physically restrained by the officers and thus the drugs discarded by him during his flight were properly received in evidence at trial. Similarly, in the case before us, there was neither physical force nor a submission to authority and thus no seizure of defendant under Federal law because of the officer’s direction to stop. Accordingly, defendant rests his claim on the New York Constitution and our common-law rules regulating seizures and investigative inquiries
 
 (see,
 
 NY Const, art I, § 12;
 
 People v Hollman,
 
 79 NY2d 181;
 
 People v De Bour,
 
 40 NY2d 210).
 

 While the search and seizure provision of the State Constitution is similar to the wording of the Fourth Amendment and supports a policy of uniformity between State and Federal courts, we have held that our State provision, for reasons peculiar to New York, is subject to its own interpretation
 
 (see, People v Keta,
 
 79 NY2d 474, 496-497;
 
 People v Johnson,
 
 66 NY2d 398, 406-407). Accordingly, when construing our State provision, we have not required that an individual be physically restrained or submit to a show of authority before finding a seizure in cases such as this. Under New York law, one may be seized if the police action results in a "significant interruption [of the] individual’s liberty of movement”
 
 (People v De Bour, 40
 
 NY2d 210, .216,
 
 supra; People v Martinez,
 
 80 NY2d 444, 447,
 
 supra; People v Townes,
 
 41 NY2d 97). An interruption may result from the use of force or because the
 
 *535
 
 individual "submits to the authority of the badge”
 
 (People v Cantor,
 
 36 NY2d 106, 111;
 
 see also, United States v Mendenhall,
 
 446 US 544, 553-554). Defendant maintains that a direction to a citizen to stop, when made by a uniformed police officer, invariably involves a sufficient show of authority to constitute a seizure as a matter of law.
 

 While a verbal command, standing alone, will not usually constitute a seizure, we have recognized that when coupled with other behavior, it may. Thus, in
 
 People v Townes
 
 (41 NY2d 97,
 
 supra),
 
 a plainclothes police officer emerged from an unmarked cár with his gun drawn, approached two men walking down a street and shouted "Freeze, police”. The People conceded, and this Court agreed, that the officer’s actions amounted to a seizure of the defendant. Similarly, in
 
 People v Boodle
 
 (47 NY2d 398,
 
 cert denied
 
 444 US 969), we held that the defendant was seized, while sitting in the back of a moving patrol car, when a police officer commanded him to "Just keep your hands where I can see them”
 
 (see also, People v May,
 
 81 NY2d 725, 727).
 

 The facts here are uncomplicated. The police received a radio report of a man selling narcotics. Within a minute they arrived at the location indicated and observed that defendant was the only person, out of a group of 10, who matched the description. As one of the officers walked toward him, defendant, after looking in the officer’s direction, walked away from him. At this point, the officer directed him to "stop”. While a reasonable person might have been taken aback by a police officer’s direction to "stop”, the key question is whether defendant’s liberty of movement was interrupted.
 

 There are no bright lines separating various types of police activity. Determining whether a seizure occurs during the course of a street encounter between the police and a private citizen involves an analysis of the "most subtle aspects of our constitutional guarantees”
 
 (Cantor,
 
 36 NY2d 106, 112,
 
 supra; see generally, People v Hicks,
 
 68 NY2d 234, 239,
 
 supra).
 
 The test is whether a reasonable person would have believed, under the circumstances, that the officer’s conduct was a significant limitation on his or her freedom
 
 (see, People v Hicks,
 
 68 NY2d 234, 240,
 
 supra).
 
 Typically the inquiry involves a consideration of all the facts and a weighing of their individual significance: was the officer’s gun drawn, was the individual prevented from moving, how many verbal commands were given, what was the content and tone of the
 
 *536
 
 commands, how many officers were involved and where the encounter took place. The courts below found no seizure here and, based on a review of the record, we cannot say, as a matter of law, that their conclusions were erroneous. While the language used by police may, in some instances, be so forceful and intimidating that it constitutes the seizure of an individual, the evidence does not indicate it rose to that level here.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed.