■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR ROSA, Appellant. [819 NYS2d 312]—

Cardona, P.J. Appeal from a judgment of the County Court of Ulster County (Bruhn, J.), rendered March 21, 2005, convicting defendant upon his plea of guilty of the crimes of course of sexual conduct against a child in the second degree and criminal possession of a weapon in the third degree.

Defendant was first interviewed by the State Police in October 2003 concerning allegations that he had sexually abused the 10-year-old victim. Defendant was not arrested at that time. Approximately one month later, the State Police sought to interview defendant again. As a result, Joseph Sinagra, an investigator with the Town of Ulster Police Department, State Police Investigator Michele Meyers and members of the City of Kingston Police Department all attempted to locate defendant.

Sinagra was the first to discover defendant on the streets of the City of Kingston, Ulster County. He pulled his unmarked police cruiser onto the sidewalk near defendant and asked him to stop, which defendant did. Two marked police cruisers soon converged on the scene and were joined by Meyers and her partner. According to Meyers, she asked defendant if he would be willing to speak with her again concerning the investigation and he agreed. Meyers then accompanied defendant on an errand a short distance away and the two returned to Meyers's vehicle, where defendant was informed that he would be transported to the police barracks for questioning. Meyers also told defendant that she had to conduct a pat-down of his person to ensure that he did not have any contraband. At that point, defendant voluntarily turned over a dagger and, during Meyers's pat down of defendant, he reached into his own right front pants pocket to remove additional objects. In so doing, defendant exposed the inside of said pocket, permitting Meyers to see what she identified as the butt of a gun. Meyers pulled the weapon from defendant's pocket and defendant was placed under arrest.

Defendant was subsequently charged with course of sexual conduct against a child in the second degree (two counts), criminal possession of a weapon in the third degree and endangering the welfare of a child. Following a hearing, County Court denied defendant's motion to suppress the gun and a statement he

made regarding its purpose. Defendant thereafter pleaded guilty to a single count of course of sexual conduct against a child in the second degree and criminal possession of a weapon in the third degree with the understanding that he would be sentenced, as a second felony offender, to concurrent prison terms of five years. Defendant was sentenced as agreed and now appeals, claiming that County Court erred in failing to grant his motion to suppress (*see* CPL 710.70 [2]).

Determination of the suppression issue initially turns on what level of authority the police exercised over defendant when he was first encountered on the streets of Kingston (*see generally People v De Bour*, 40 NY2d 210 [1976]; *see also People v Hicks*, 68 NY2d 234, 239 [1986]). To that end, and in "consideration of all the facts and a weighing of their individual significance" (*People v Bora*, 83 NY2d 531, 535 [1994]), we agree with defendant that the interaction between defendant and the police constituted a statutory stop and detention (*see* CPL 140.50 [1]) that must be justified by reasonable suspicion that defendant was involved in criminality (*see People v Moore*, 6 NY3d 496, 499 [2006]; *People v Hollman*, 79 NY2d 181, 185 [1992]; *People v Roots [Taylor]*, 13 AD3d 886, 887 [2004], *lvs denied* 4 NY3d 890, 891 [2005]). In light of defendant's past interaction with the police concerning their ongoing investigation, and given the manner that defendant was confronted by Sinagra and quickly joined by additional officers who did not permit defendant to carry out a nearby errand without accompaniment, we conclude that "a reasonable person would have believed, under the circumstances, that the officer[s'] conduct was a significant limitation on his or her freedom" (*People v Bora, supra* at 535; *see People v Cantor*, 36 NY2d 106, 111-112 [1975]).

We also agree with defendant that his detention was inadequately justified on this record. " '[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion' " (*People v Williams*, 305 AD2d 804, 806 [2003], quoting *Terry v Ohio*, 392 US 1, 21 [1968]; *see People v Cantor, supra* at 113). Significantly, our review of suppression rulings is limited to the evidence presented at the suppression hearing (*see People v Wilkins*, 65 NY2d 172, 180 [1985]; *People v Williams, supra* at 808). Here, the testimony of Meyers and Sinagra—the only witnesses produced at the suppression hearing—failed to contain a single "specific and articulable fact" which could lead one to conclude that the seizure of defendant was warranted. On the contrary, the witnesses merely claimed, without elaboration, that defendant was

sought out for an additional interview due to "an allegation or a complaint of a possible sexual misconduct by [defendant]." Notably, the People failed to elicit what facts were known to the officers that had reasonably led them to suspect defendant's involvement. Moreover, although Meyers indicated that defendant would have been arrested had he not willingly joined the officers for questioning, she conceded that a warrant for his arrest had not been issued at that time and did not explain what facts provided her with probable cause for the arrest.

Furthermore, given our conclusion that the initial stop of defendant was unlawful, we likewise find that the evidence acquired as a direct result of the seizure must be suppressed (see generally People v Arnau, 58 NY2d 27, 32 [1982], cert denied 468 US 1217 [1984]). In the absence of reasonable suspicion, it cannot be said that the pat down of defendant was a permissible corollary to a lawful stop and detention (see People v Hill, 262 AD2d 870, 870-871 [1999]), especially since Meyers conceded that she had no reason to believe that defendant was armed prior to conducting the search (see CPL 140.50 [3]; People v Powell, 246 AD2d 366, 368-369 [1998], appeal dismissed 92 NY2d 886 [1998]). Additionally, "[a]lthough a police officer may reasonably pat down a person before he places him in the back of a police vehicle, the legitimacy of that procedure depends on the legitimacy of placing him in the police car in the first place" (People v Kinsella, 139 AD2d 909, 911 [1988]; see People v Gamble, 210 AD2d 903, 903 [1994], lv denied 85 NY2d 862 [1995]; see e.g. People v Hollins, 248 AD2d 892, 894 [1998]). Likewise, since the detention of defendant was unjustified on this record, the People may not rely upon the plain view doctrine for admission of the firearm in question (see generally People v Brown, 96 NY2d 80, 88-89 [2001]).

Finally, due to our determination of the suppression issue, defendant's plea of guilty must be vacated as to both charges. Although defendant's possession of a handgun was unrelated to the course of sexual conduct charge, the record reveals that defendant was induced to plead guilty due to the promise of concurrent sentences on the unrelated charges (see People v Taylor, 80 NY2d 1, 15 [1992]; see also People v Cruz, 225 AD2d 790, 791 [1996]).

Crew III and Spain, JJ., concur.

Mugglin, J. (dissenting). We respectfully dissent. In our view, the evidence at the suppression hearing neither requires a finding that the police forcibly stopped and detained defendant (County Court found defendant was not in custody) nor that the police lacked reasonable suspicion that defendant commit-

ted a crime. As the Court of Appeals has observed: "There are no bright lines separating various types of police activity. Determining whether a seizure occurs during the course of a street encounter between the police and a private citizen involves an analysis of the 'most subtle aspects of our constitutional guarantees.' The test is whether a reasonable person would have believed, under the circumstances, that the officer's conduct was a significant limitation on his or her freedom. Typically the inquiry involves a consideration of all the facts and a weighing of their individual significance: was the officer's gun drawn, was the individual prevented from moving, how many verbal commands were given, what was the content and tone of the commands, how many officers were involved and where the encounter took place" (*People v Bora*, 83 NY2d 531, 535-536 [1994] [citations omitted]). Moreover, in *People v Ocasio* (85 NY2d 982, 984 [1995]), the Court, in considering appropriate factors, noted that, among other things, no sirens or lights were used to interfere with the defendant's transit, no gun was displayed, the defendant was at no time prevented from departing and, as the defendant consented to accompany the officers to the precinct, he was not forcibly detained.

From this record, we would not conclude that the mere presence of as many as five officers requires a finding that defendant was forcibly stopped when the testimony is that he acquiesced in the request to stop made by the first officer at the scene and consented, pursuant to the request of Investigator Michele Meyers, to accompany her to the State Police barracks. Notably, no guns were drawn, defendant was allowed to complete his errand, the verbal commands were only to stop and there is no evidence that the other officers, although present, were involved in any way. Moreover, when told that he had to be subjected to a pat-down search before entering the police vehicle, defendant voluntarily turned over a dagger. During the subsequent pat down, as the majority notes, when defendant removed a lighter and some change from his pants pocket, the butt of a gun was revealed, which the officer then seized. In addition, although admittedly sparse, the suppression record reflects that the police had interviewed defendant on a prior occasion with respect to his possible sexual misconduct toward his biological daughter and wanted again to talk with him concerning this subject as part of their continuing investigation. In our view, this testimony reflects that the police had a reasonable suspicion that defendant had committed a crime. As a result, we would affirm County Court's suppression ruling and defendant's convictions.

Peters, J., concurs. Ordered that the judgment is reversed, on

the law, plea vacated and matter remitted to the County Court of Ulster County for further proceedings not inconsistent with this Court's decision.