■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JERRY FRANCOIS, Appellant. [877 NYS2d 54]—

Judgment, Supreme Court, New York County (John Cataldo, J.), rendered January 29, 2008, convicting defendant, upon his plea of guilty, of criminal possession of stolen property in the fourth degree, and sentencing him, as a second felony offender, to a term of 1¹/₂ to 3 years, affirmed.

The court properly denied defendant's suppression motion. An officer trained and experienced in detecting suspicious use of MetroCard vending machines observed defendant repeatedly attempting to use a credit card in such a machine. The credit card appeared to be functioning, but each time the machine asked defendant to enter a ZIP code, defendant seemed to be unable to enter a ZIP code matching the credit card. Since most people know their own ZIP codes, this behavior was suggestive of a person trying to use someone else's credit card, as opposed to a person innocently having technical difficulties using his own card. Accordingly, the police had, at least, a founded suspicion of criminality warranting a level-two common-law inquiry (*see People v Wilson*, 52 AD3d 239 [2008], *lv denied* 11 NY3d 743 [2008]).

When the officer approached defendant and asked if he needed assistance, defendant said he was having problems with his credit card. The officer asked defendant to accompany him and his partner to a nearby wall of the subway station, in order to continue the inquiry away from the busy area in front of the MetroCard machines, and, without any use of force, he physically guided defendant by briefly grasping his elbow. Even though the officer made slight physical contact with defendant, none of the police conduct elevated the encounter to a seizure requiring reasonable suspicion (*see e.g. People v Stevenson*, 55 AD3d 486 [2008]; *People v Cherry*, 30 AD3d 185, 185-186 [2006], *lv denied* 7 NY3d 811 [2006]; *People v Wigfall*, 295 AD2d 222 [2002], *lv denied* 99 NY2d 540 [2002]). The officer lawfully asked to see the credit card and a form of identification, and the discrepancy between the identification card and defendant's actual appearance provided probable cause for his arrest. Concur—Friedman, J.P., Nardelli and DeGrasse, JJ.

Catterson, J., dissents in a memorandum as follows: Because I believe that the police forcibly stopped and detained the defendant without a reasonable suspicion that the defendant had committed or was about to commit an offense, I dissent. Initially, I agree with the motion court and the majority that police had a founded suspicion of criminality based on the defendant's furtive behavior at the MetroCard machine. In my view, this founded suspicion merely allowed the police to pursue a common-law right to inquire what the defendant was doing at the MetroCard machine. (*People v De Bour*, 40 NY2d 210, 223-224 [1976].)

Where I depart from the majority's reasoning is in the characterization of the police conduct as "slight physical contact with defendant." It is uncontested that Police Officer Rodriguez approached the defendant, identified himself by showing his police identification and shield, and asked if the defendant was having a problem with his credit card. Officer Rodriguez was on the defendant's right side and Rodriguez's partner was on the defendant's left. The defendant replied that he was having problems with his credit card. Officer Rodriguez "grabbed" or "grasp[ed]" the defendant's elbow and propelled him to the side of the MetroCard machine. He simultaneously said to the defendant "please walk with me." The defendant found himself against a wall next to a MetroCard machine, with Officer Rodriguez directly in front of him and another police officer "directly" to the side of Rodriguez. Officer Rodriguez further testified that he had "grabbed [the defendant] away from the people just in case anything happen[ed] and I put him on the wall."

This stop by police is significantly more intrusive than the minor interruptions that we have permitted under a *De Bour* level-two stop. (*See People v Stevenson*, 55 AD3d 486 [1st Dept 2008]; *People v Cherry*, 30 AD3d 185, 186 [1st Dept 2006], *lv denied* 7 NY3d 811 [2006] [officer justified in raising hand to physically restrain defendant in a level-two encounter]; *People v Grunwald*, 29 AD3d 33, 34 [1st Dept 2006], *lv denied* 6 NY3d 848 [2006] [police officer did not exceed limits of common-law right to inquire where he told defendant to "(c)ome over here," got in front of the defendant, and confronted him face-to-face when he tried to walk away].)

The ultimate test of whether an encounter has risen to the level of a seizure is, "whether a reasonable person would have believed, under the circumstances, that the officer's conduct was a significant limitation on his or her freedom." (*People v Bora*, 83 NY2d 531, 535 [1994].) I submit that any reasonable person who is grasped by the elbow, "put . . . on the wall," and surrounded by police officers in the middle of a subway station would believe that there was a significant limitation on his freedom. Accordingly, I would reverse the motion court.