■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE MOORE, Appellant. [940 NYS2d 274]—

Judgment, Supreme Court, New York County (Richard D. Carruthers, J., at hearing; Marcy L. Kahn, J., at jury trial and sentencing), rendered June 18, 2010, convicting defendant of criminal possession of a controlled substance in the fifth degree and tampering with physical evidence, and sentencing him, as a second felony drug offender whose prior felony conviction was a violent felony, to concurrent terms of three years and 2 to 4 years, unanimously affirmed.

Defendant argues that the court erred in denying his motion to suppress narcotics and money that were recovered during what he claims was an unlawful seizure. At the suppression hearing, the arresting police sergeant testified to the following: On June 23, 2009, the sergeant was in plain clothes supervising an anti-crime patrol in an unmarked police car with two other officers. At 11:45 P.M., he received radio notification that an anonymous caller had reported a man with a firearm on Seventh

Avenue and 134th Street. Several blocks from that location, the sergeant saw defendant, who matched the description provided by the caller. After the police car pulled up alongside defendant and slowed "to a crawl," the sergeant rolled down the window and yelled, "Stop! Police."

The sergeant testified that defendant looked at him, and immediately turned and ran. In response, the sergeant exited the car and reached for his holstered firearm. Running about 10 feet behind defendant, the sergeant saw him "reach[ ] for something" near his waist and then throw an object that resembled a crumpled napkin towards the curb. Defendant continued running for several yards before he stopped and was apprehended.

The object that defendant threw away was recovered and determined to be "twists" of crack cocaine. Upon a subsequent search of defendant, the police found more crack cocaine and a large amount of cash in his pants pocket. After the hearing court denied the defendant's motion to suppress this evidence, he was convicted after a jury trial of criminal possession of a controlled substance and tampering with physical evidence.

The only issue raised by this appeal is whether the hearing court's finding that the sergeant did not draw his gun until after defendant ran from the police was supported by the sergeant's testimony at the hearing. Defendant claims that the testimony indicates that the sergeant was drawing his gun as he was calling to defendant to stop and thus that the sergeant conducted an unlawful level III seizure. Defendant argues that he threw the narcotics into the street in response to the sergeant's illegal conduct, and that the evidence should therefore have been suppressed and the indictment dismissed.

We find that the record sufficiently supports the hearing court's determination that when the sergeant called out to defendant to "stop," his gun was not yet drawn. Thus, the hearing court properly found that the sergeant's encounter with defendant began as a level II stop, did not become a level III seizure until defendant fled so that there was no basis for suppression.

A level II stop, based on "founded suspicion that criminal activity is afoot," is a "common-law right of inquiry" where a police officer may ask "pointed questions that would lead the person approached reasonably to believe that he or she is suspected of some wrongdoing and is the focus of the officer's investigation," but which stops short of a forcible stop and seizure (*People v Hollman*, 79 NY2d 181, 185 [1992]; *see also People v De Bour*, 40 NY2d 210 [1976]). A level III seizure, based

on "reasonable suspicion that a particular person has committed, is committing or is about to commit" a crime, "requires either physical force or, if there is no physical force, a submission to the assertion of authority" (*People v Bora*, 83 NY2d 531, 534 [1994]). Although there is no "bright-line test" to distinguish a level II inquiry from a level III seizure, an officer's command to "stop," even when repeated, generally does not constitute a seizure where the officer is still in a police car and has not drawn his gun (*People v Gould*, 228 AD2d 280 [1996], *lv denied* 89 NY2d 864 [1996]). However, an officer's command to "stop" while his gun is drawn constitutes a level III seizure (*see People v Moore*, 6 NY3d 496, 499 [2006]; *People v Hampton*, 200 AD2d 466, 469-470 [1994], *appeal dismissed* 83 NY2d 998 [1994]).

In this case, defendant does not dispute that the anonymous tip justified a level II inquiry and that a level III seizure was justified once defendant began to run in response to the sergeant's command to stop (*see People v Moore*, 6 NY3d at 500-501 [an anonymous tip, together with suspicious conduct like flight justifies a level III stop and frisk]). However, defendant contends that, even before he fled, the sergeant was conducting an unlawful level III seizure because he was drawing his gun as he called on defendant to stop. Defendant points out that, on direct examination during the hearing, the sergeant did not mention drawing his gun, but on cross-examination he testified that he may have drawn his gun as he was exiting the car. Defendant argues that the "only fair inference is that [the sergeant] was drawing his gun as he issued his forceful command to . . . stop."

However, defendant's interpretation of the record is untenable. During the hearing, the sergeant testified that when he directed defendant to "stop," he had his hand on the door handle "ready to jump out or stay in the car." The sergeant further testified as follows: "Q. At what point did you draw your gun? "A. When the defendant started run [sic] away from me. "Q. As you exited the car, did you have your hand on your gun holding it? "A. Well, I am right handed. I would open the door with my right land [*sic*], and when I exited the car it was almost—like I said it all kind of happened at the same time. I would have reached for my gun, which would have been on the right side, and I had it out. I took it out at that point. "Q. So it all happen [*sic*] pretty quickly after you exited the vehicle? "A. Well, he—yeah, it was all pretty much simultaneous when he started running, and when I exited the vehicle. It was within a split second of each other."

Contrary to defendant's argument, the sergeant did not testify

that he drew his gun as he was exiting the car. As the sergeant explained, because he is right-handed, he could not have drawn his weapon until *after* he exited the car and let go of the door handle. Nothing in this testimony indicates that the sergeant drew his gun before defendant started to run. Thus, the sequence of events described by the sergeant supports the hearing court's finding that defendant's "flight commenced before [the sergeant] drew his pistol."

The credibility findings of a hearing court are accorded great deference and will not be disturbed unless a police officer's testimony is "manifestly untrue, physically impossible, contrary to experience, or self-contradictory" (*People v Rosario*, 275 AD2d 224, 225 [2000], *lv denied* 95 NY2d 938 [2000] [internal quotation marks omitted]; *see also People v Morales*, 210 AD2d 173 [1994]). Because there is no indication that the sergeant's testimony about when he drew his gun was in any way incredible, we affirm. Concur—Mazzarelli, J.P., Andrias, Friedman, Catterson and Freedman, JJ.