People v Avant (2023 NY Slip Op 02325)

People v Avant

2023 NY Slip Op 02325

Decided on May 3, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 3, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
LINDA CHRISTOPHER
JOSEPH A. ZAYAS
LILLIAN WAN, JJ.

2022-02036
 (Ind. No. 483/20)

[*1]The People of the State of New York, respondent,
v
Rickey Avant, appellant.

Leon H. Tracy, Jericho, NY, for appellant.
Anne T. Donnelly, District Attorney, Mineola, NY (Jason R. Richards and Kevin C. King of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Helene F. Gugerty, J.), rendered March 11, 2022, convicting him of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and criminal possession of a firearm, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing pursuant to a stipulation in lieu of motions (Robert G. Bogle, J.), of the suppression of physical evidence.
ORDERED that the judgment is affirmed.
At a suppression hearing, Detective Anthony Cousins of the Village of Hempstead Police Department testified that on June 11, 2020, he responded to a radio call reporting that a man with a gun was chasing someone. When he arrived at the location less than two minutes later, Detective Cousins saw the defendant, who was wearing a sweatshirt that matched the description of the sweatshirt provided by the dispatcher. Detective Cousins saw that the pocket of the defendant's sweatshirt "was hanging low," and based on the outline and shape of the object inside, Detective Cousins believed that the defendant had a gun in the pocket. Without saying anything to the defendant, Detective Cousins and his partner followed the defendant on foot from a distance of 20 to 30 feet. The defendant entered the vestibule of a building, and, as Detective Cousins looked into the vestibule from outside, he saw that the defendant was holding a gun. Detective Cousins and his partner arrested the defendant and recovered a loaded firearm.
Following the hearing, the Supreme Court denied suppression of physical evidence. The defendant subsequently pleaded guilty to criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and criminal possession of a firearm. The defendant appeals.
In People v De Bour (40 NY2d 210, 223), the Court of Appeals set forth a four-level framework within which to evaluate police action. Under the first level, "[t]he minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality" (id. at 223). "The next degree, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and [*2]permits a somewhat greater intrusion in that a police[ ] [officer] is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure" (id.). "Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person" (id.). "Finally a police officer may arrest and take into custody a person when he [or she] has probable cause to believe that person has committed a crime, or offense in his [or her] presence" (id.).
In determining whether a seizure has occurred, "[t]he test is whether a reasonable person would have believed, under the circumstances, that the officer's conduct was a significant limitation on his or her freedom" (People v Bora, 83 NY2d 531, 535). "Typically the inquiry involves a consideration of all the facts and a weighing of their individual significance: was the officer's gun drawn, was the individual prevented from moving, how many verbal commands were given, what was the content and tone of the commands, how many officers were involved and where the encounter took place" (id. at 535-536).
Here, the Supreme Court properly denied suppression of physical evidence. When Detective Cousins and his partner first encountered the defendant, they had the right to approach him and request information (see People v De Bour, 40 NY2d at 223). The defendant matched the general description provided over the officers' radio, and the officers arrived at the subject location less than two minutes after receiving the radio call. Contrary to the defendant's contention, Detective Cousins and his partner did not seize the defendant until they saw him holding a gun in the vestibule of the building. The testimony of Detective Cousins showed that, until that point, a reasonable person would not have believed the officers' actions to be "a significant limitation on his or her freedom" (People v Bora, 83 NY2d at 535). Specifically, the officers did not activate their vehicle's police light or sirens, they did not shout "police" or anything of the sort at the defendant, they followed the defendant from a distance of 20 to 30 feet and did not say anything to the defendant while following him, and they walked after the defendant rather than running after him. That the defendant could not continue into the building after he entered the vestibule was not the result of police action, as Detective Cousins testified that a key or admission by a security guard was required to enter the building itself. Detective Cousins further testified that he and his partner first drew their weapons only after they had already seen the defendant holding the gun.
Thus, the People established that Detective Cousins and his partner followed the defendant in an unobtrusive manner that did not limit his freedom of movement. Only after the officers saw the defendant holding a gun did they seize him. At that point, the officers had probable cause to arrest the defendant and to seize the gun incident to the lawful arrest (see People v Julien, 201 AD3d 948, 950; People v Stevens, 171 AD3d 1106, 1107).
The defendant's remaining contentions are without merit.
DUFFY, J.P., CHRISTOPHER, ZAYAS and WAN, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court