People v Wright (2025 NY Slip Op 04345)

People v Wright

2025 NY Slip Op 04345

Decided on July 25, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 25, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CURRAN, J.P., BANNISTER, SMITH, DELCONTE, AND HANNAH, JJ.

462 KA 22-02031

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
LAFAYEL WRIGHT, DEFENDANT-APPELLANT. 

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (NICHOLAS P. DIFONZO OF COUNSEL), FOR DEFENDANT-APPELLANT. 
MICHAEL J. KEANE, DISTRICT ATTORNEY, BUFFALO (PAUL J. WILLIAMS, III, OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Erie County (Debra L. Givens, A.J.), rendered October 19, 2022. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon his plea of guilty, of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]). Defendant contends that Supreme Court erred in refusing to suppress physical evidence obtained as a result of an encounter with the police. We reject that contention.
According to the evidence presented at the suppression hearing, an officer was riding in a patrol vehicle driven by his partner when they received information over the computer-aided dispatch system and police radio that an unidentified 911 caller had reported an assault of a female victim in progress in the vicinity of a certain street corner. The officer was advised of the description of the suspect that had been provided by the 911 caller, including the suspect's perceived heritage, sex, age, and other physical characteristics, as well as the suspect's clothing and direction of travel. Within minutes and a few blocks away from the reported incident, the officer observed an individual walking down a sidewalk—later identified as defendant—who fit the description of the suspect. There was no one else in the vicinity who matched that description.
The officer's hearing testimony and his body-worn camera (BWC) footage further established that, after his partner pulled over the patrol vehicle with its overhead lights activated, the officer exited the vehicle and immediately yelled "stop." Without turning around or otherwise acknowledging the officer's command, defendant began to run down the sidewalk. The officer pursued defendant. During the pursuit, the officer used his radio to report that the suspect had been located and thereafter again shouted "stop." The officer testified that he never removed his service weapon from the holster during the encounter and never told defendant that he needed to stop on account of the officer having a service weapon.
Defendant ran down a driveway between houses and attempted to jump a fence, at which point the officer ordered defendant to the ground. Defendant instead pushed off from the officer following brief physical contact and ran back onto the street, where he was quickly apprehended by other law enforcement personnel. The officer testified that, during the interaction that occurred near the fence, he had observed defendant reach into his waistband and throw a black pistol over his shoulder into a yard. Shortly after defendant was detained, a black pistol was recovered from the area in which the officer had observed defendant throw the firearm.
The court determined that the information possessed by the officer at the outset of the [*2]encounter—i.e., his observation of an individual matching the description of the suspect provided by the 911 caller in close proximity to the reported assault—provided the police with a founded suspicion that defendant may have been involved in criminal activity, thereby giving rise to a common-law right of inquiry. The court further reasoned that, as a result of defendant's flight upon the officer's request to stop, the police obtained reasonable suspicion that defendant had committed a crime, thereby justifying the pursuit and forcible detention of defendant. The court thus concluded that the police conduct was justified and refused to suppress the physical evidence obtained as a result of the encounter.
"A court's focus during 'any analysis of a governmental invasion of a citizen's person' must be on the reasonableness of the police conduct" (People v Cleveland, — NY3d &mdash, &mdash, 2025 NY Slip Op 02144, *2 [2025]; see People v De Bour, 40 NY2d 210, 218 [1976]). "In evaluating police conduct, a court 'must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter' " (People v Savage, 137 AD3d 1637, 1638 [4th Dept 2016]; see De Bour, 40 NY2d at 222-223). As set forth in De Bour, the court uses "a graduated four-level test for evaluating street encounters initiated by the police: level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion [but short of a forcible seizure] and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; [and] level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime" (People v Moore, 6 NY3d 496, 498-499 [2006]; see De Bour, 40 NY2d at 223).
As particularly relevant here, "[u]nder New York law, one may be seized if the police action results in a 'significant interruption [of the] individual's liberty of movement' " (People v Bora, 83 NY2d 531, 534 [1994], quoting De Bour, 40 NY2d at 216). "Police pursuit of an individual 'significantly impede[s]' the person's freedom of movement and thus must be justified by reasonable suspicion that a crime has been, is being, or is about to be committed" (People v Holmes, 81 NY2d 1056, 1057-1058 [1993]). "[A]n individual's flight from a level one or two police encounter, without more, does not provide the reasonable suspicion necessary to pursue them" (Cleveland, — NY3d at &mdash, 2025 NY Slip Op 02144, *1; see People v May, 81 NY2d 725, 728 [1992]; Holmes, 81 NY2d at 1058). Nevertheless, "a defendant's flight in response to an approach by the police, combined with other specific circumstances indicating that the suspect may be engaged in criminal activity, may give rise to reasonable suspicion, the necessary predicate for police pursuit" (People v Sierra, 83 NY2d 928, 929 [1994]; see People v Parker, 32 NY3d 49, 56 [2018]; People v Woods, 98 NY2d 627, 628 [2002]).
Defendant first asserts that the officer, without the requisite reasonable suspicion to justify the intrusion, immediately engaged in a level three seizure by using a forceful tone in verbally commanding defendant to stop because a reasonable person in defendant's position would have believed that the officer's conduct was a significant limitation on their freedom. We conclude that defendant's assertion lacks merit.
"While the language used by [the] police may, in some instances, be so forceful and intimidating that it constitutes the seizure of an individual," "a verbal command, standing alone, will not usually constitute a seizure" (Bora, 83 NY2d at 535-536). "The test is whether a reasonable person would have believed, under the circumstances, that the officer's conduct was a significant limitation on [their] freedom" (id. at 535). "Typically the inquiry involves a consideration of all the facts and a weighing of their individual significance: was the officer's gun drawn, was the individual prevented from moving, how many verbal commands were given, what was the content and tone of the commands, how many officers were involved and where the encounter took place" (id. at 535-536).
Here, contrary to defendant's assertion, the evidence adduced at the suppression hearing, including the BWC footage, establishes that the officer's first command for defendant to stop was not "so forceful and intimidating that it [alone] constitute[d a] seizure" (id. at 536; see People v Moore, 93 AD3d 519, 519-522 [1st Dept 2012], lv denied 19 NY3d 865 [2012]; People v Boland, 89 AD3d 1144, 1145 [3d Dept 2011], lv denied 18 NY3d 955 [2012]; see also People v Simmons, 149 AD3d 1464, 1465 [4th Dept 2017], affd 30 NY3d 957 [2017]; People v Brown, [*3]67 AD3d 1439, 1439-1440 [4th Dept 2009], lv denied 14 NY3d 798 [2010]). Further, considering all of the facts, we conclude that the officer's first "command to 's[top],' in a public setting, with gun holstered, and without any physical restraint on defendant's freedom of movement, did not constitute a seizure" (Simmons, 149 AD3d at 1465; see Bora, 83 NY2d at 535-536; Moore, 93 AD3d at 519-522; Boland, 89 AD3d at 1145).
Defendant next asserts that, even if he was not immediately seized when the officer first commanded him to stop, his flight was insufficient under the totality of the circumstances to provide the officer with the requisite reasonable suspicion to pursue and detain him. That assertion likewise lacks merit.
Here, "[b]ased upon defendant's physical and temporal proximity to the scene of the reported [assault] incident and the fact that defendant's physical characteristics and clothing matched the description of [the suspected assailant] involved in the incident," we conclude that the officer "had a founded suspicion that criminal activity was afoot," thereby providing a sufficient basis for him to approach and make an inquiry of defendant (People v Atkinson, 185 AD3d 1438, 1439 [4th Dept 2020], lv denied 35 NY3d 1092 [2020]; see People v Gayden, 126 AD3d 1518, 1518 [4th Dept 2015], affd 28 NY3d 1035 [2016]; see generally De Bour, 40 NY2d at 223). Contrary to defendant's assertion, we further conclude that the court properly determined that the officer "thereafter had the requisite reasonable suspicion to pursue and detain [defendant] based on the combination of the abovementioned specific circumstances indicating that defendant may have been engaged in criminal activity and his [immediate] flight in response to the approach by the officer[ ]" (Atkinson, 185 AD3d at 1439; see Parker, 32 NY3d at 56-57; Gayden, 126 AD3d at 1518; People v Johnson, 189 AD3d 2145, 2146-2147 [4th Dept 2020], lv denied 36 NY3d 1098 [2021]).
We therefore conclude that the court properly determined that the police conduct was justified and refused to suppress the physical evidence obtained as a result of the encounter.
Entered: July 25, 2025
Ann Dillon Flynn
Clerk of the Court