■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARYL LEE RUFFIN, Also Known as DARRYL RUFFIN, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Boklan, J.), rendered July 26, 1985, convicting him of burglary in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, in part, of those branches of the defendant's omnibus motion which were to suppress statements made by him to the police and to suppress physical evidence.

Ordered that the judgment is reversed, on the law and the facts, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted to the extent of suppressing the gray vinyl duffel bag and its contents from evidence, and is otherwise denied, the defendant's plea of guilty is vacated, and the matter is remitted to the County Court, Nassau County, for further proceedings.

In the early morning of August 16, 1984, while the defendant was riding a bicycle through a residential area of Lawrence, New York, he had a street encounter with police officers which resulted in his arrest and his being charged with burglary in the second and third degrees, petit larceny, possession of burglar's tools, and resisting arrest. On this appeal, the defendant contends that the police conduct was unjustified and illegal at its inception, and that the hearing court erred in failing to rule that all of his statements and the physical evidence obtained as a result of this encounter should be suppressed. The police testimony at the suppression hearing revealed the following sequence of events:

At about 1:40 A.M. on August 16, 1984, while on patrol in the vicinity of Wentworth Place and Broadway in Lawrence, Nassau County, Police Officer Robert Morea observed the defendant, a black male in his early thirties, riding a white bicycle with a brown paper bag hanging over the handlebars and a gray duffel bag, approximately two feet long, slung over his shoulder. The defendant initiated the encounter by approaching the police officer's marked car and asking for the time. After the officer responded to the request, the defendant proceeded westbound on Broadway.

Officer Morea continued observing the defendant ride a distance of about 60 feet, then pulled his vehicle up alongside the bicycle, turned on the interior light of the patrol car, rolled down the window and gestured with his hand for the defendant to stop. The officer noticed that the brown paper

bag contained either "audio or visual electronic equipment", and asked the defendant, "[w]hat's going on?" The defendant responded that he was returning home from work, explaining that he worked part time, off of the books at a bakery on Rockaway Turnpike and Central Avenue, and that his wife was at home sick and due to give birth in about eight days. The officer knew of no bakery at the location provided by the defendant and asked him for identification. The defendant produced a wallet displaying a Social Security card in his name, and upon Morea's request, agreed to accompany him in the police vehicle back to the bakery to be identified by his employer.

Morea testified that a rash of about 8 or 9 burglaries had occurred recently in the area during the early morning hours, some involving the use of arms, committed by suspects described as black males ranging in age from their mid-twenties to mid-thirties. One of the burglaries involved the theft of a semiautomatic machine gun.

Morea radioed for assistance from another police unit to safeguard the defendant's bicycle, and when another officer responded, he proceeded with the defendant in the back seat of his vehicle to the location provided by him, but found no bakery. Morea then asked the defendant if he could provide a different location where the bakery might be and he directed the officer to proceed about six blocks away where they came to a bagel shop. Upon entering, the manager informed Morea that the defendant did not work there and that he did not know him.

According to Morea, the defendant then changed his story and claimed that he had originally stated that he had only been outside the store with some friends. As they walked out of the bagel shop, Morea observed that another policeman, Officer Kelly, arrived on the scene and got back into his patrol car. Morea then asked the defendant for the gray duffel bag on his shoulder. The defendant asked why and hesitated, but upon Morea's further request for the bag, the defendant complied. Morea noticed that the bag was heavy as he placed it between the two front seats in the police car.

Officer Kelly then asked the defendant where he had obtained the video recorder which was in the bag. The defendant at first stated it was his, but on further questioning, admitted that he did not have a receipt for it because "he had bought it hot". Kelly then informed the defendant that he was under arrest, and a struggle ensued with Morea joining in to aid

Kelly in handcuffing the defendant. The arrest took place about two feet from the front left side of the patrol car where the window was open. The defendant's gray duffel bag was located in the front seat near the window, and about 2 to 3 minutes after the arrest and prior to placing the defendant in the patrol car, Morea searched the bag for weapons. He found several items, including four screwdrivers, a donation can, and a plastic bag containing rolled coins. Officer Kelly found a flashlight in the defendant's waistband when he patted him down after he was handcuffed.

From the bagel shop, the defendant was transported about two blocks to a police booth where another officer told Morea that he had seen the defendant on foot earlier in the evening in the neighborhood. When questioned at that point about where he obtained the articles in the duffel bag and the video cassette recorder, the defendant responded that he received them from another individual but did not elaborate any further on this. As for the bicycle, the defendant admitted that he had taken it from a house in the Lawrence area and agreed to show the police where the house was located.

Kelly and Morea proceeded to drive according to the defendant's directions, ending up at a residence located at 184 Wildacre Avenue in Lawrence. Arriving there, the defendant said he took the bicycle from the side of the house. The bicycle was now in the trunk of Morea's police car, and Morea spoke to a resident of the house and showed her the bicycle which she identified as belonging to her husband. At this point, a thorough body search of the defendant was conducted and the police found several items including a wedding band, a college graduation ring and a bracelet. At one point, the defendant further stated that the previously named individual had burglarized a house in the Lawrence area while the defendant played "chicky" for him. That person, he claimed, gave him the articles found in his possession, including the VCR. The defendant then directed the officers to the vicinity of 24 West End Place, stating that the articles were taken from that home. From the time the defendant was arrested to the time the defendant spoke of the named individual, about 1 to 1½ hours had elapsed. Not until he was taken to the police station was the defendant finally read his *Miranda* rights.

The hearing court granted the defendant's motion to suppress only to the extent that it held inadmissible the statements made by the defendant after his arrest outside the bagel shop because they were made without the benefit of prior *Miranda* warnings.

Contrary to the defendant's assertions, we find that the police action was justified at its inception and reasonably related in scope to the circumstances *(see, People v De Bour,* 40 NY2d 210). Following the defendant's initial approach to Officer Morea to request the time, the officer properly inquired of the defendant as to his reason for being in the area, which inquiry was devoid of harassment or intimidation. As found by the hearing court and in accordance with the principles enunciated in *People v De Bour (supra),* the encounter was justified based upon the common-law right to inquire in view of the attendant circumstances which were sufficient to arouse the officer's interest and activate his founded suspicion that criminality was afoot.

The evidence also supports the hearing court's conclusion that the statements made by the defendant prior to his arrest were voluntarily provided by him and lawfully elicited by the police.

However, we conclude that the duffel bag and its contents, which, according to Officer Morea's testimony, were searched about 2 to 3 minutes after the defendant was arrested, subdued and handcuffed outside the bagel shop, should have been suppressed as the fruit of an illegal warrantless search conducted in the absence of exigent circumstances. The arrest took place outside the police vehicle and the duffel bag was located inside the patrol car between the two front seats. Under these facts, it cannot be concluded that the police had a reasonable belief that the defendant could gain possession of a weapon or be able to destroy evidence located in the duffel bag. Thus, the duffel bag was not within the "grabbable area" and its search cannot be sustained as one conducted incident to a lawful arrest *(People v Gokey,* 60 NY2d 309, 311; *cf., People v Smith,* 59 NY2d 454).

Turning to the issues concerning the full search of the defendant conducted outside the premises located at 184 Wildacre Avenue, and the physical evidence obtained at that location, we hold that the search was reasonable and proper, and the evidence obtained as a result thereof is admissible. Once the defendant was lawfully arrested and in custody, the effects in his possession were subject to search and seizure. Although the warrantless search was temporally and physically removed from the arrest, it was reasonable in scope and *conducted* within a reasonable time after the arrest *(see, United States v Edwards,* 415 US 800). The normal processes incident to the defendant's arrest and custody had not been completed and the police were entitled to conduct a thorough

search of his person and seize material evidence of the crimes for which he had been arrested.

With respect to the bicycle, we agree with the hearing court that this was admissible under the inevitable discovery exception to the exclusionary rule. This item was not obtained as a result of the illegal custodial interrogation of the defendant, but was merely identified as a stolen item after the police learned from the defendant the location of the crimes committed by him (cf., People v Stith, 69 NY2d 313). In the course of investigating the burglaries reported, it was inevitable that the police would have discovered that the white bicycle was an item stolen from one of the residences.

In view of our holding that the duffel bag and its contents should have been suppressed, on this ground, we reverse the defendant's judgment of conviction and vacate his plea of guilty. Bracken, J. P., Kunzeman, Kooper and Spatt, JJ., concur.