People v Rodriguez (2021 NY Slip Op 03202)





People v Rodriguez


2021 NY Slip Op 03202


Decided on May 19, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 19, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
BETSY BARROS
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI, JJ.


2016-11646
 (Ind. No. 334/15)

[*1]The People of the State of New York, respondent,
v
Lance Rodriguez, appellant.


Paul Skip Laisure, New York, NY (Sean Nuttall of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, William H. Branigan, and Rachel N. Houle of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Joseph A. Zayas, J.), rendered October 11, 2016, convicting him of attempted criminal possession of a weapon in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing (Ira H. Margulis, J.), of those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials. By decision and order dated October 23, 2019, this Court affirmed the defendant's conviction (People v Rodriguez, 176 AD3d 1111). On December 15, 2020, the Court of Appeals reversed the decision and order of this Court and remitted the matter for further proceedings (People v Bisono, 36 NY3d 1013). Justices Dillon and Barros have been substituted for former Presiding Justice Scheinkman and former Justice Roman (see 22 NYCRR 1250.1[b]).
ORDERED that, upon remittitur from the Court of Appeals, the judgment is affirmed.
The defendant was charged with criminal possession of a weapon in the second degree (two counts) and criminal possession of a weapon in the fourth degree. At a pretrial suppression hearing, the People presented evidence that officers on routine patrol observed the defendant riding his bicycle in the middle of the street in a "reckless manner," causing several cars to stop or swerve so that they did not hit him. According to Police Officer Schnell, the defendant had his right hand on the handlebars and his left hand over the left side of his waistband holding a "bulky" object. Officer Schnell testified that he and his fellow officers followed the defendant in their car for a few blocks, and then pulled their car up alongside the defendant and called out to him, "[h]old up, police." When the defendant continued riding, the police followed him and Officer Schnell again stated, more loudly, "[h]old up, police." After the second request, the defendant stopped his bicycle.
Officer Schnell testified that, from his patrol car, he asked the defendant whether he had anything on him and the defendant replied that he did. To clarify, the officer claimed that he repeated the question, and the defendant again replied that he had something on him. Officer Schnell testified that he got out of the car and asked the defendant exactly what it was he had, and the defendant told him that he had a gun in his waistband. Officer Schnell testified that he walked [*2]around to the back of the bicycle, held the defendant's arms up so he could not reach the gun, and told his sergeant that the defendant had a gun. The sergeant recovered a loaded firearm, which was tucked into the defendant's waistband, the same place the defendant had been holding while riding his bicycle. At that point, the defendant was placed under arrest.
The defendant testified at the suppression hearing and denied that he had been swerving or otherwise riding the bicycle in a reckless manner, or that any cars had passed him other than the police vehicle. He claimed that he had been holding his cell phone in his left hand between his waistband and his chest listening to music without headphones.
According to the defendant, it was another officer, not Officer Schnell, who asked him to stop, and that another officer, not Officer Schnell, exited the car, unzipped his jacket, began patting him down, then asked whether he had anything on him. The defendant denied having said anything to the police before he was frisked. The defendant testified that when the officer who was patting him down found the gun, Officer Schnell restrained his arms, and the other officer recovered the gun. The officers then handcuffed the defendant and took him back to the police station house.
Following the hearing, the Supreme Court denied those branches of the defendant's omnibus motion which were to suppress the gun and his statements to law enforcement officials following the stop. Thereafter, the defendant pleaded guilty to one count of attempted criminal possession of a weapon in the second degree in full satisfaction of the indictment. The defendant appealed his conviction to this Court.
By decision and order dated October 23, 2019, this Court affirmed the defendant's conviction on the ground that the defendant's waiver of his right to appeal foreclosed appellate review of his challenge to the hearing court's suppression determination (People v Rodriguez, 176 AD3d 1111).
On December 15, 2020, the Court of Appeals reversed this Court's decision and order, holding that the defendant's waiver of the right to appeal was invalid under its analysis in People v Thomas (34 NY3d 545), and remitted the matter to this Court for further proceedings (People v Bisono, 36 NY3d 1013).
Accordingly, we now consider the defendant's contention that the Supreme Court erred in denying those branches of his omnibus motion which were to suppress the gun and his statements to law enforcement officials. For the reasons that follow, we affirm.
In People v De Bour (40 NY2d 210), the Court of Appeals "set forth a graduated four-level test for evaluating street encounters initiated by the police: level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime" (People v Moore, 6 NY3d 496, 498-499; see People v De Bour, 40 NY2d at 223).
Although the stop of a motor vehicle generally constitutes a seizure requiring reasonable suspicion that a crime has occurred (see People v Spencer, 84 NY2d 749, 752), case law has uniformly evaluated police encounters with bicyclists under the De Bour analysis applicable to pedestrians (see People v Day, 8 AD3d 495, 496; People v Ruffin, 133 AD2d 425; see also People v Feliciano, 140 AD3d 1776; People v Lee, 96 AD3d 1522, 1525; People v White, 35 AD3d 1263, 1264; Matter of Jamaal C., 19 AD3d 144, 145).
The Court of Appeals has held that an officer's instruction to a pedestrian to "stop" requires only a common-law right of inquiry and does not constitute a seizure (see People v Bora, [*3]83 NY2d 531, 533). Whether the encounter is elevated to a seizure "involves a consideration of all the facts and a weighing of their individual significance: was the officer's gun drawn, was the individual prevented from moving, how many verbal commands were given, what was the content and tone of the commands, how many officers were involved and where the encounter took place" (id. at 535-536).
Here, the Supreme Court properly determined that the officer's statements to the defendant to "hold up" constituted a level two encounter under De Bour, and that the officers were justified in making a common-law inquiry based upon their observations of the manner in which the defendant was riding his bicycle, as well as their observation of a "bulky" object that the defendant was holding at his waistband (see People v Day, 8 AD3d at 496; People v Ruffin, 133 AD2d 425; see People v Lee, 96 AD3d at 1525; People v White, 35 AD3d at 1264; Matter of Jamaal C., 19 AD3d at 145).
The officers' testimony, which the hearing court credited, established that the defendant stopped in response to the commands and that the officers did not block his path or otherwise signal that he was not free to leave (see People v Bora, 83 NY2d at 536; People v Jones, 164 AD3d at 1366; People v Feliciano, 140 AD3d at 1777; People v Montero, 284 AD2d 159, 160). The unobtrusive manner in which the police followed the defendant did not elevate the pursuit itself to a seizure (see People v Feliciano, 140 AD3d at 1777; People v Rainey, 122 AD3d 1314, 1314-1315).
The officers were justified in frisking the defendant based on Officer Schnell's observation of the bulky object in the defendant's waistband together with the defendant's statements that he had a gun (see People v Casey, 149 AD3d 770, 770-771; Matter of Jamaal C., 19 AD3d at 145).
Finally, contrary to the defendant's contention, Officer Schnell's testimony was not incredible. "[T]estimony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory, is to be disregarded as being without evidentiary value, even though it is not contradicted by other testimony or evidence introduced in the case" (People v Maiwandi, 170 AD3d 750, 751 [internal quotation marks omitted]). "A hearing court's determination as to witness credibility is accorded great weight on appeal, as it saw and heard the witnesses, and its determination will not be disturbed unless clearly unsupported by the evidence" (id. at 751 [internal quotation marks omitted]). Here, upon our review of record, we find that the Supreme Court's determination was supported by the evidence, and that Officer Schnell's testimony was neither incredible nor unbelievable.
Accordingly, since the Supreme Court properly denied those branches of the defendant's motion which was to suppress the gun and his statements to law enforcement officials, we affirm the defendant's conviction.
DILLON, J.P., BARROS, CONNOLLY and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court